(126 So. 675)

**CITY OF NEW ORLEANS v. MOEGLICH.**

No. 30310.

Jan. 6, 1930.

Rehearing Denied March 5, 1930.

Bertrand I. Cahn, City Atty., and Wm. F. Conkerton, both of New Orleans, for appellant.

Legier, McEnerny & Waguespack, of New Orleans, for appellee.

THOMPSON, J.

This is a proceeding in which the city of New Orleans asks to be decreed the owner in fee simple of a small strip of land comprising 1.76 acres to be used for the purpose of extending St. Bernard avenue from its existing terminus through to Bayou St. John.

The property desired is fully described in the petition, and is shown on a sketch or map prepared by the city engineer.

It is alleged in the petition that the condition of traffic and congested condition in the section of the city where the land is situated will become more and more acute, dangerous, and unbearable, as that section of the city increases in population, in street car service, motor traffic, and travel of every description; that said extension and opening of said street is also necessary to permit the prompt, safe and speedy arrival and service of fire engines of the city to put out any fires occurring in that section, and for prompt and efficient hospital ambulance and a proper police patrol service.

It is further alleged that the public interest, necessity, convenience, and safety require the opening and continuation of St. Bernard avenue by the opening of said street from Gentilly avenue to Bayou St. John.

That petitioner has been unable to agree with the owner of said property on a price or valuation.

The defendant in a general plea to the merits denied the immediate necessity and expediency of plaintiff's demand for the property, and alleged that the exigencies of the situation did not warrant the expropriation.

In the alternative, it was alleged that the value of the strip of ground with the damage to the remainder of her property is approximately $35,000.

The necessity for the taking of the property and the value thereof as well as the damage to the remaining property was submitted to a jury of freeholders, which rendered a verdict for plaintiff upon plaintiff paying to the defendant the sum of $35,000.

The city appeals, and in answer to the appeal defendant prays that plaintiff's demand be rejected and in the alternative that the judgment as to the amount be affirmed.

The court said in the recent case of Kansas City S. & G. Co. v. Meyer, 166 La. 668, 117 So. 765, that the necessity and expediency of expropriation, when sought to be exercised under the authority of eminent domain, is judicial, and that the owner may always contest such question before the courts.

Whether that question should have been tried and determined by the trial judge, leaving the question of value and damage for the jury which under the Code is to be impaneled to *assess the value of the land*, is of no importance now, since the court approved the finding of the jury both as to necessity and valuation.

It is shown that the defendant owns 6.66 acres of land on which she and her sons are presently operating a floral farm and raising a small quantity of vegetables for sale.

The tract lies at the end of St. Bernard avenue; the southern boundary of the tract adjoining the terminus of St. Bernard avenue. The avenue is 127 feet wide. The proposed extension of the avenue will cross

the defendant's land at an angle of about 45 degrees.

The map in evidence shows that St. Bernard avenue at the present time is opened to Gentilly road, at which road there is a circle called De Saix Place. From this circle the avenue is open but not paved to the defendant's tract, and from that point on to Caton street the avenue is closed by the defendant's land and property owned by Pailet and Mrs. Miller, from whence the avenue is open to Bayou St. John.

On May 31, 1929, the mayor and commission council authorized the city attorney to institute the present suit, and in that resolution it was declared that it was necessary and essential in the public interest that St. Bernard avenue be continued by opening said street from Gentilly avenue to Bayou St. John, and that to do so it was necessary to go through the defendant's property.

On the trial of the case, John P. Klorer, commissioner of public property, which department has jurisdiction of the opening, widening, and straightening of streets, testified that it was necessary to provide as far as possible for the future traffic conditions to open up what are known as "radial" streets; that St. Bernard is a radial street, and somewhat out of the usual alignment of streets, and that such are the kind of streets that communities are spending large sums of money to construct after development takes place; that the opening up and extending the street will afford a short connection for all of that section of the city that is below St. Bernard avenue, between St. Bernard avenue and the Barracks, and that it will give the people an opportunity to get out to the lake; that the street can be opened up immediately.; and that it is the intention of the city to lay out the street as soon as the city acquires the right to do so.

■■ It is quite true that the Constitution only allows private property to be taken to the extent that the public interest demands, and no further, and expropriation beyond the public interest and necessity would obviously be unconstitutional. On the other hand, it is well settled that all property is held subject to the right of expropriation, when the public interest and necessity requires that it be surrendered by the owner.

■ We are of the opinion that the record in this case justified the verdict of the jury and judgment of the court in adjudicating the property to the city to be used for public purposes.

■ Nor was it necessary, in view of the existing conditions for the city, to show actual, immediate, and impending necessity for the expropriation. It is sufficient, in carrying out the general plan of improvements contemplated in the near future, to show that the defendant's land will be needed for the purposes set out in the petition.

That the said land will be needed ultimately to open up and extend St. Bernard avenue is beyond question. That the land will be so appropriated by the city in the near future is clearly established by the evidence.

The rule is well settled by jurisprudence that jurors in such a proceeding to a certain degree possess the character of experts themselves, and great weight is to be accorded to their finding.

■ The verdict, however, is subject to review by the courts, upon whom devolves the duty of reducing or increasing the amount fixed by the jury, where it appears that a gross or manifest error has been committed.

Some time in advance of this proceeding the city selected a committee to examine the strip of property to be expropriated and to make an estimate of its value.

The committee was composed of real estate agents and people who had had experience in real estate values.

The committee appraised the property at $12,772.52, but on the trial of the case the members of the committee who were sworn as witnesses for the city increased the valuation to $15,000 for the 1.76 acres. That is also the valuation which the witnesses of the defendant placed on the strip of land. There is therefore little difference between the value as fixed by plaintiff's experts and those testifying for the defendant.

The plaintiff's witnesses did not undertake to estimate the amount of damage which would be occasioned to the balance of defendant's land by reason of the expropriation.

Therein lies the difference between the plaintiff and the defendant's witnesses.

The latter estimate the damage at $20,000. This amount, added to the price of the land to be taken, makes up the $35,000 claimed by defendant and allowed by the jury.

The witnesses for the defendant, nearly all of whom are real estate brokers or agents, take as a basis for their estimate the assumption that the acreage will be divided into lots and put on the market as a subdivision. The witnesses present two plans or exhibits. The first or plan A contemplates getting 28 lots of 50 feet frontage each, or a total of 1,400 feet frontage out of the acreage after deducting 1.76 acres.

This is valued at $50 a front foot, bringing a gross return of $70,000, from which is to be deducted certain stated expenses, which would leave a net profit for the 28 lots of, say, $25.700.

The other plan, B, takes into consideration the entire acreage without the contemplated street.

On this plan it is said there will be 37 lots with a frontage of 50 feet each, valued at $60 a front foot, and bringing a return of $111,000 or a net profit of $60,700, after deducting certain designated expenses. The difference between the two plans makes up the $35,000 which it is claimed the defendant will be entitled to should she be required to surrender the 1.76 acres.

In other words, the theory of the defendant's witnesses is that, while the value of the land to be taken is $15,000, the loss on the remaining land will be $20,000.

The reason advanced by some of the defendant's witnesses for the difference of $10 per front foot on the two plans is that the second plan contemplates a secluded subdivision that has not a main artery running through the land, with the consequent noise, etc.; that the modern tendency is for a subdivision of a quiet nature, with restrictions as to the character of dwellings that can be put up.

The theory may be very plausible, but does it meet the test of values in proceedings of expropriation?

It has been frequently held by this court that the criterion of value is the market value of the property at the date of the institution of the suit for expropriation, taking into consideration the use to which the property may be applied and all the uses to which it is adapted, excluding any increment of value occasioned by the proposed construction work or work of public utility for which the property is wanted. Texas Pacific, etc.,

v. Elliott, 166 La. 348, 117 So. 275; Louisville & N. R. Co. v. De Montluzin, 166 La. 211, 116 So. 854.

In the last mentioned case it was held that contemplated subsequent subdivision of property and sale of lots after expenditure of considerable sums on improvement cannot serve as basis of valuation at date of institution of expropriation suit for railroad right of way as partaking too much of character of speculation.

▮ If a contemplated subdivision of a tract of land cannot serve as a basis for fixing the value of the land taken because too remote and speculative, for a like reason it cannot be made the basis of assessing the damage or decrease in value of the remaining land.

▮ The whole of defendant's evidence as to resulting damage on account of extending the street through her property has for its basis the comparison of values of the property as a subdivision before and after the street improvement is made.

If this method is left out of consideration, it is extremely difficult for the court to determine just what amount the defendant should recover in addition to the value of the land to be taken.

In view of all of the evidence, we have concluded to fix the amount at $10,000.

For the reasons assigned, it is therefore ordered that the judgment appealed from be amended by reducing the amount thereof to $25,000, and, as thus amended, the said judgment is affirmed, at the plaintiff's cost.

O'NIELL, C. J., dissents from the judgment for damages to the remaining property, but otherwise concurs.