LAND, J.
 

 In order to construct that portion of the highway lying between Merauxville and Violet in St. Bernard parish, La., and known as State Highway Project No. 5,300, it became necessary for the Louisiana highway commission to expropriate a right of way 100 feet wide and approximately 1,490 feet long, or 3.42 acres, through the front of the property of defendant, Mrs. Victor De Bouchel. This
 
 *971
 
 property is located on the left bank of the ’Mississippi river and has a frontage of 7% arpents, moré or less, on the river, by a depth extending to Lake Borgne.
 

 The jury awarded to the Louisiana highway commission the land sought as a right of way across the property of defendant, and awarded defendant $140 as the value of the land taken, and $40 additional as damages to the remainder of the property.
 

 The verdict of the jury was approved by the trial judge, and the right of way required by the Louisiana highway commission was adjudged to it, upon the payment to defendant of $180., From this judgment defendant has appealed.
 

 Defendant demands the sum of $2,394, or $700 per acre, as the value of the land actually taken. by the Louisiana highway commission, and the further sum of $6,074.10, as damages incident to the taking of the land, or a total sum of $8,468.10.
 

 The witnesses for plaintiff estimated the value of the land to be expropriated at $30, or $35 per acre, on the theory that it had little or ho value for agricultural purposes, and was fit only for pasturage or for a dairy.
 

 On the other hand, defendant’s witnesses have shown that forty arpents of land about 3/4 of a mile distant from the property of defendant sold, in September, 1929, at the price of $13,250. This property is about 9 miles from .the city of New Orleans. (See deed from Frank Orefasi to John Boe.)
 

 Defendant has also shown that on October 1, 1930, another tract in the neighborhood of defendant’s lands, 1% arpents front by about 50 acres in depth, sold for $9,500. This property is about 7 miles below Canal street in the city of New Orleans. (See deed from Christian Sensebee to Marin Colomb.)
 

 The property of defendant, Mrs. De Bouchel, is on the left bank of the Mississippi river, about 8 miles below the city of New Orleans, and has a frontage of 7% arpents.
 

 Mr. Gelpi, a witness for defendant, is a real estate expert of the city of New Orleans, and has handled commercial property, farm lands, subdivision property, and residential property for the last nine years.
 

 This witness places a value of $700 pe'r arpent on the front arpents of the above-mentioned tracts, on the front arpents of other _ lands in the neighborhood, and on the front arpents of defendant’s lands, to a depth of 6 or 7 arpents; a value of about $400 per arpent, to a depth of 5 or 6 arpents; and a value of about $200 per arpent, to a depth of- 6 or 7 arpents.
 

 Mr. Gelpi makes it plain that, in arriving at the value of these tracts and of the property of defendant, the location of the land with reference to the growing city of New Orleans must be taken into consideration.
 

 He -testifies that the land on the other side of New Orleans in Jefferson parish is becoming more and more a residential section, that most of the land that used to be farm land has become residential property, and that the farm area is becoming more and more restricted in the Parish of St. Bernard.
 

 While these conditions would necessarily enhance the value of the lands of defendant, in our opinion, the values arrived at by this witness are excessive.
 

 
 *973
 
 The average price per arpent of the 40-ar-pent tract, within % of a mile of defendant’s property, was $330, while the assessed value in St. Bernard parish of front arpents of defendant and of others, situated on the Mississippi river to the swamp, has been $370 per arpent for a number of years, and has been uniformly acquiesced in by property owners in that parish.
 

 Defendant, through her son, Lionel De Bouchel, offered to accept the assessed value, if this case was settled out of court. Tr. 30, Def. Witnesses.
 

 We are fully aware of the fact that the market value, not the assessment, of lands is the test of their value in expropriation proceedings. New Orleans Pacific R. R. Co. v. Murrell, 36 La. Ann. 344; Louisiana Ry. & Nav. Co. v. Morere, 116 La. 999, 41 So. 236.
 

 The assessment in this case is cited merely as an incident, as no sale offered in evidence by defendant shows specifically a valuation of $700 per arpent for front arpent tracts, but recites a lump sum as the purchase price for the entire property and, under the circumstances, we are of the opinion that an average price per acre comes nearer the true market value of the property to be expropriated. Our conclusion, therefore, is that defendant should recover for the 3.42 acres of land taken by plaintiff at the valuation of $330 per acre, or the total sum of $1,128.60.
 

 2. Defendant contends that the front lawn of her home has been cut off from the flower garden and residence, reducing the value of the property for residential purposes in the sum of $500 and, by reason of the segregation of the front portion of the lawn from the remaining property, reducing the value of the segregated property itself in the sum of $500.
 

 As shown by map at page 23 of the transcript, the new paved road cuts off a strip on the front of defendant’s property 275 feet wide at the lower end, and 175 feet at the upper end, and 1,490 feet in length.
 

 This strip fronts on the west on a graveled road, and on the east on the new paved road. As defendant’s lands are only 8 miles from the city of New Orleans and are located on a hard-surfaced road, they have a residential value, and residences may be built on the segregated strip, and face either the old graveled road or the new paved road. We do not find, therefore, any resulting damage done to the segregated strip in question by the construction of the new paved road through the front of defendant’s property, nor to the land upon which the residence of defendant is located, as this also may be used for residential purposes, and faces on the new paved road.
 

 3. The damages claimed for interference with the drainage of the lands of defendant, because of excavations on either side of the right of way too deep to permit the water to flow to the rear, in the direction of the natural drainage, are eliminated in this case as the price for drainage is included in the contract made by Koss Construction Company with the Louisiana highway commission, and the present suit was brought immediately after the right of way had been graded, and before the drainage could be attended to properly. The drainage system on the De Bouchel property will be arranged to the satisfaction of every one, and a culvert will be placed under the private roadway from the front and alongside the residence. See testimony of
 
 *975
 
 resident engineer, Tr. 23, 24, 26; 34, 39, Def. Witnesses.
 

 4. Act No. 9 of 1930 (Ex. Sess.), p. 38, § 27, authorizes the Louisiana highway commission to take possession of the property to be expropriated prior to the termination of the expropriation proceedings and to the payment of the price for the property. Acting under this authority, the property of defendant was enr tered by representatives of the commission and by deputy sheriffs, and in the controversy that followed, one of the sons of defendant, Mrs. De Bouchel, was arrested and jailed.
 

 Defendant applied to the district judge of St. Bernard parish for a temporary restraining order, prior to the entry of the commission upon defendant’s premises, but the order was not issued until compelled by a writ of mandamus from this court, and, in the meantime, the commission had obtained possession of the property and filed the present expropriation suit. De Bouchel v. Louisiana Highway Commission, 172 La. 908, 135 So. 914.
 

 Defendant has claimed, in the present suit, damages in the sum of $1,000 for mental suffering and anguish occasioned by having her son taken from the property and incarcerated in the parish jail; damages in the sum of $500 “from having her property invaded, occupied and worked upon in defiance of her wishes”; and damages in the sum of $500 ■“for being maliciously and unlawfully deprived of her legal right to contest-the necessity of the taking of an additional right of way on her property.”
 

 It is well settled that, in an expropriation suit, the issue must be confined to ascertaining the market value of the property and the damage growing out of the expropriation, at the date when the 'suit was filed, and to nothing else. Louisiana Ry. & Nav. Co. v. Jones, 113 La. 29, 36 So. 877; Louisiana Ry. & Nav. Co. v. Sarpy, 125 La. 388, 51 So. 433; Louisiana Ry. & Nav. Co. v. Xavier Realty Co., 115 La. 328, 39 So. 1.
 

 The items of damages claimed above, by defendant cannot be recovered, therefore, in the present suit.
 

 5. Defendant claims damages in the sum of $50 for the destruction of fences, formerly across the right of way expropriated in this case; damages in the sum of $100 for removal of defendant’s front picket fence from present location to the line of right of way; and damages in the sum of $31.10 for new fencing necessary on each side of yard.
 

 The resident engineer testifies that the replacing of fences is covered by the contract of the construction company with the commission, and that they put up a four-strand barbed wire fence, with good posts, for $7 per hundred feet.
 

 About 300 feet of fence were destroyed, according to the testimony of the resident engineer. Tr. 12 and 13.
 

 Lionel De Bouchel contends, however, that 400 feet of fence were destroyed, and assesses the damage at $50. This witness states that it would cost about $8 per hundred feet to put up the fence, or $32, and adds $18 “for straightening out the fence,” or a total of $50. We are satisfied that $32 is ample allowance for the restoration of these fences. Tr. 23, 24, Def. Witnesses.
 

 The cost of removing the picket fence to the line of right of way, and of the two fences on each side of the yard, has not been proven.
 

 
 *977
 
 Lionel De Bouchel did not personally know the cost which, he says, was estimated by Webster De Bouchel, who appeared as a witness for defendant, but failed to testify as to the cost of removal of the picket fence and the two side fences.
 

 6. Defendant claims $658 for trees and shrubbery destroyed on the right of way. Webster De Bouchel, when questioned as a witness for defendant as to the correct price, stated that “it was around that figure,” i. e., $658, and that he had gotten the prices from the Metairie Nursery. No witness from the nursery was placed on the stand to corroborate De Bouchel as to the price and, besides, the right of way agent testified that there were only four trees, crepe myrtles about three years old, and some lilies on the right of way, and that they were not worth over $15. Tr. 75.
 

 Under the circumstances, the Louisiana highway commission should not be made to pay more than $15 for the trees and plants in question.
 

 7. Defendant claims as damages court costs in the sum of $35 and $350 for attorney’s fees in prosecuting suit for injunction agairist the Louisiana highway- commission, and in making application for mandamus to this court to compel the issuance by the district Judge of St. Bernard parish of an injunction, restraining the commission from entering upon the premises of defendant.
 

 As nothing but the market value of the property and damages to the remainder can be recovered in an expropriation suit, these items of damages cannot be considered in the present case.
 

 8. For the same reason, the commission cannot be mulcted in damages in .the present suit in the sum of $200, as costs of experts, whom defendant claims that she was compelled to employ to present her evidence.
 

 9. Defendant also claims damages in the sum of $400 as the value of a crop of growing corn destroyed on the right of way through defendant’s property.
 

 Lionel De Bouchel estimates that 200 barrels of yellow Creole corn, worth $2 per barrel, were destroyed by the commission on the right of way, i. e., 60 barrels to the acre on the 3.42 acres included in the right of way.
 

 The jury went to the field and examined the corn crop and the right of way, and allowed only $40 as damages to the remainder of the property. Tr. 37, Def. Witnesses.
 

 The county agent for the United States Department of Agriculture, when asked: “What will the crop of corn on the De Bouchel place yield?” answered:
 

 “I’ll tell you, I would hate to estimate that. If it were mine I would plow it under and put something else in there and try to bolster up the soil. I am positive he does not count on the yield—no farmer would.
 

 “Q. Why would you plow it under? A. Well, you can see that it can’t possibly make a fair yield, nor will it make commercial corn. It is stunted and it is fully matured.” Tr. 56, 57.
 

 Joseph J. Mistrot, a truck farmer, testified as follows: “Well, I don’t think very much of the condition of the corn now. Really, I wouldn’t lose time to pay a man to go in there and cut it for my stock, because it would cost me too much to cut it for my stock.” Tr. 61.
 

 
 *979
 
 Decomine Dauterive, a farmer and cattle raiser, testified as follows:
 

 “Well, there is a crop of corn on there now that is practically a failure. I consider that after corn tossles, and it has not produced what it should, it is over — it is what we consider lost.
 

 “Q. Do you consider the corn crop on the De Bouchel property a total loss? A. Yes, practically a loss.” Tr. 63, 64.
 

 The highest estimate made by plaintiff’s witnesses is 15 barrels, at most, per acre of dwarfed Creole yellow corn, worth $1 per barrel. Tr. 105, 106. The corn destroyed on the right of way, 3.42 acres, is worth, therefore, $51.30, and defendant is entitled to recover that amount.
 

 10. Defendant is claiming that a strip of land on each side of the right of way, 15 feet in width and 1,490 feet in length, has been reduced in value by at least the sum of $500 by reason of the impossibility of using the same, owing to the presence of the fences along the lines of the right of way.
 

 This strip of land is on the property of defendant inside of the right of way fence, and is termed a “headland,” in which the plow horse turns around at the end of the row and resumes his course, in plowing the rows running from the fence.
 

 The only theory upon which defendant has been able to recover anything like adequate compensation in this case is that her lands are valuable for residential purposes. Their agricultural value is shown by a preponderance of the evidence in the case to be negligible. In our opinion, the segregated piece west of the new paved highway, and the piece with the residence on it east of the new paved highway, have been increased in value by this improvement, instead of being damaged thereby.
 

 '
 
 It is therefore ordered that the judgment appealed from be amended and increased from $180 to the sum of $1,226.90, consisting of the following items of damages: (1) Land actually taken as right of way, $1,128.60; (2) fences destroyed on right of way, $32; (3) trees and plants destroyed on right of way, $15; (4) corn destroyed on right of way, $51.30.
 

 It is now ordered that the judgment appealed from, as amended, be affirmed.