*1019
 
 HAMITER, Justice.
 

 ■The defendants, Miss Octavine M. Cooper and Mrs. Carrie C. Dixon, own a tract of land in the Parish of Ascension, containing 140 acres, which is bounded on the north by Bayou Manchac and on the south by State Route No. 885, or, as popularly referred to, the Bullion Road. Across this tract there is proposed to be constructed a part of the Prairieville-Nesser Highway, a link in what is known as the Airline Highway.
 

 For the .accomplishment of such purpose the State of Louisiana, through the Department of Highways, instituted this expropriation suit praying that there be adjudged to it the necessary right of way over and across defendants’ property upon payment of the value thereof. That sought from defendants is a strip, with an area of 30.552 acres, running generally north and south near the center of the tract a distance of approximately 4,078% feet, and having a uniform width of 300 feet except at the southern end (at the intersection of the Bullion Road) where, for about 200 feet, it flares to a width of 600 feet. This strip is more fully shown on a blue print marked P-1 A and attached to plaintiff’s supplemental petition.
 

 Answering, defendants pleaded specially that the quantity of land sought to be expropriated exceeds that reasonably necessary for the purpose intended by the plaintiff in the near future. They prayed for judgment denying plaintiff’s demands. In the alternative, if the desired right of way be granted, they asked judgment in the total sum of $16,410, being for the following alleged items:
 

 Land within the right of way at $200 per acre $6110.40
 

 Cost of constructing twelve bridges at $150 each 1800.00
 

 Damage resulting to remainder of property 6000.00
 

 Destruction of timber on right of way -2500.00
 

 The expropriation jury, before whom the case was tried, returned a verdict awarding plaintiff a right of way 200 feet wide (being 100 feet less than that sought), with a flare at the southern end théreof propqrtionately reduced, upon payment to defendants of $200 per acre for the land within the right of way, plus $600 for the timber thereon, $800 as damages to the balance of the property, -and $600 for the construction of four bridges. Accordingly, the judgment of the district court adjudged to the plaintiff the reduced right of way (having an area of 20.875 acres), conditioned upon defendants’ receiving the total sum of $6,175; and it taxed the costs of the proceedings against plaintiff.
 

 The plaintiff appealed, complaining here of the reduction in the right of way, of the value of the land as fixed by the jury, and of the damages assessed. It insists that the right of way proposed should be granted upon payment to defendants of
 
 *1021
 
 not more than $2,233.12. Appellees urge an affirmance of the judgment.
 

 Besides constituting a link in the important artery of traffic known as the Airline Highway, which extends from near Krotz Springs (at the intersection of U. S. Highways 71 and 90) to New Orleans, passing in the vicinity of Baton Rouge, the proposed Prairieville-Nesser project (a total length of about eight miles) is a part of U. S. Highways 61 and 65, both of which originate in Minnesota and terminate at New Orleans. Also, it is included in the National System of Interstate Highways (sometimes referred to as Inter-Regional Highways), specifically being a portion of the southernmost transcontinental route which commences at Jacksonville, Florida, on the.Atlantic Seaboard, and ends at San Diego, California, on the Pacific Coast. That system, established by Congress in 1944, comprises approximately 40,000 miles of roads covering the entire United States, they having been selected because of their importance in connecting major manufacturing areas. Although about one percent of this country’s total mileage is contained therein, the system carries approximately twenty percent of its total traffic.
 

 Each state constructs that part of the system lying within its confines. The Federal Government, however, contributes a portion of the cost, if the construction complies with its standards, the contribution being 33% percent of that which is necessary for obtaining the rights of way and 50 percent of that required for the actual building. But the contribution is not available until after the plans for a project have been approved by the Federal Public Roads Administration and the state has secured the necessary right of way in its entirety.
 

 In the construction of a link in the national system, and when federal financial assistance is to be furnished, the Public Roads Administration requires the highest type of highway design. Also, it recommends the acquisition of a right of way of not less than 300 feet in width. In keeping with these standards, Mr. Harry B. Henderlite, while Chief Engineer of the Louisiana Department of Highways, designed the Prairieville-Nesser link, adopting therefor what is known as Class or Type I highway. This type, which necessitates having a minimum width right of way of 300 feet with flares at the intersections, will care for an average of 3,000 or more vehicles during each day of 24 hours. When entirely completed it consists of four 12 foot concrete lanes and accompanying flares, each two lanes being separated by a neutral ground at least 40 feet in width, with service roads and shoulders along the outer edges.
 

 The 12 foot concrete lanes, of course, are primarily for what is referred to generally as through traffic; they are known as the express ways. The 40 foot neutral ground, according to the testimony of Mr.
 
 *1023
 
 Henderlite and of Mr. C. F. Meadours, Traffic Engineer of the Department of Highways, is needed for the maneuvering, such as crossing or turning, of vehicles having long wheel bases. Besides, it is a safety factor in that it reduces the hazard of driving caused by the glare of approaching headlights. The flares at the intersections provide additional sight distance both for vehicles on the express ways and for those using the intersecting roads. As to the service roads designed, plaintiff’s engineers explain that they are in a sense semi-private driveways which collect traffic from the adjacent property and carry it to predetermined points of entrance along the express ways. Because traffic moves very fast on a highway of the type proposed, and includes many heavy busses, trucks and trailers, it is quite hazardous for vehicles to enter and leave the express lanes from any and all points.
 

 It is true, as pointed out by defense counsel in connection with the special plea for a reduction of the right of way, that the Prairieville-Nesser Highway as designed will not be completed soon; the present plans call for the construction of only two of the paved lanes. It is also true that the remainder of the Airline Highway does not now have .a uniform 300 foot width right of way, it varying from 100 to 300 feet and the greater part being of the first named width. Nevertheless, the duty of fixing the width of rights of way is specifically imposed by statute on the chief engineer of the Department of Highways, and in the performance of that duty much discretion and great latitude are permitted him. Further, his efforts are not restricted to a consideration of immediate traffic needs; his planning is to be also for the future improvement of the highway, to care for the public interest, safety and convenience in times to come. This is required because, as was well said in Crichton v. Louisiana Highway Commission et al., 172 La. 1033, 136 So. 43, 44, our “highways are not intended to be mere makeshifts, built for a day, but are intended to be permanent, lasting structures.” Thus, we find in subsection (d) of Section 47 of Act No. 4 of 1942, the following:
 

 “The width of rights of way shall be fixed by the Chief Engineer of the Department. The width so fixed may be sufficient to adequately accommodate the future improvement of the highway by the construction of additional lanes of pavement, service roads, intersections, traffic distribution devices and grade separations; and to provide sight distances and insure stability and lateral support for the embankments, structures and appurtenances to the highway; to provide for proper drainage, or otherwise sufficient in the judgment of the Chief Engineer to provide presently and in the future for the public interest, safety and convenience.”
 

 In view of this statutory provision the judiciary cannot and will not disturb
 
 *1025
 
 the chief engineer’s fixing of the width of highway rights of way unless it appears that he has abused the large discretion given him or has acted arbitrarily. As has been previously said by this court, in cases dealing with highway construction, “The engineers are the ones who should know, and, as a matter of fact, do know. We cannot substitute ou'r own opinions for the opinion of engineers in matters of this kind.” Crichton v. Louisiana Highway Commission et al., supra, and Louisiana Highway Commission v. Hays’ Heirs, 186 La. 398, 172 So. 432.
 

 The defendants have offered no evidence whatever tending to show that the chief engineer’s decision for a 300 foot width right of way is unwarranted. In support of their contention for a reduction they rely almost wholly on the admissions of plaintiff’s witnesses that not all of the remainder of the right of way occupied by the Airline Highway is of that width, and, further, that the Prairieville-Nesser link as designed will not be constructed immediately. But what defendants overlook, in assuming that position, is the now commonly recognized fact that some of the links in that heavily travelled thoroughfare, while completely adequate when constructed, were designed without due regard for future needs, as a result of which they cannot now be widened except at an exorbitant, if not an almost prohibitive, cost.
 

 To avoid the commission of the same mistakes, and after giving special consideration to the importance of the Prairieville-Nesser link in our state and national system of highways and generally to the public convenience and safety of tomorrow, the chief engineer reached the decision now being assailed. Also, obviously, he took into account the matter of the federal government’s contribution to the cost of the project, an assistance that cannot be expected if a lesser width obtains. In so deciding, we cannot say that he has abused his discretion or has acted arbitrarily.
 

 With reference to the conclusion of the jury of freeholders that the value of the land sought to be expropriated herein is $200 per acre, we find no manifest error. True, the record contains testimony of witnesses offered by plaintiff to the effect that its market value is much less; but there is considerable other evidence indicating the worth to be $200 per acre, it disclosing that several parcels of land in the vicinity, of like character and nature, were sold in recent years for that price.
 

 Also, the evidence supports the jury award of $600 for the cost of constructing four bridges that will be necessary in providing access to defendants’ property from the new highway.
 

 But, in our opinion, error was committed in allowing defendants $800 as damages to the remainder of their land. Of course, their tract of 140 acres in its present condition is suitable only for farming and stock raising purposes, although it
 
 *1027
 
 has not been so used for a number of years; and its value for those purposes will be reduced somewhat when the proposed highway, occupying a right of way of 30.552 acres, divides the tract into two parcels, leaving one with about 41 acres and the other with approximately 68% acres. The land is not a great distance, however, from the City of Baton Rouge, and according to the evidence the construction of the proposed highway will render it valuable for suburban homesites, which are now much in demand, a special benefit that will offset the reduction in value for farming and stock raising purposes. Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654.
 

 Remaining to be considered is the award of $600 for the destruction of timber. Two expert timber cruisers or estimators went upon the land and, by actual tree count, found within the right of way 28,600 feet of mixed hardwood, worth $10 per thousand feet, and 80 cords of other wood, valued at $2 per cord. Their estimate and appraisement of that timber, a total of $446, is in no manner contradicted; hence, the award must be reduced to that amount.
 

 For the reasons assigned the verdict of the jury and the judgment of the district court are amended so as to adjudge to the plaintiff, upon its paying to the defendants the total sum of $7,156.40, the 300 foot width right of way (with the accompanying flare) sought in this suit, it being particularly shown and described on the blue print marked Exhibit P-1A which is attached to plaintiff’s supplemental petition herein; and, as thus amended, such verdict and judgment are affirmed at the costs of plaintiff.
 

 O’NIELL, J., absent.