**53 So.2d 908**

**STATE v. LANDRY.**

No. 39964.

May 28, 1951.

Rehearing Denied June 29, 1951.

---

Jack L. Simms, Joseph A. Loret, W. Crosby Pegues, Jr., and D. Ross Banister, all of Baton Rouge, for plaintiff-appellant.

Blum & Marchand, Donaldsonville, for defendant-appellee.

FOURNET, Chief Justice.

The State of Louisiana, through the Department of Highways, instituted proceedings on February 4, 1949, to expropriate for highway purposes a parcel of land measuring 0.376 of an acre, being the front strip of a larger tract belonging to the defendant, Joseph Burleson Landry, alleging that the parties had been unable to come to agreement. The defendant, in answer, denied the necessity of taking his property for the right-of-way; and, in the alternative, should the court decree the right of plaintiff to expropriate the land, averred that he was entitled to be paid $8,065.66 as compensation and damages. From a decree of the district court adjudging the land to the plaintiff upon the payment by it to the defendant of the sum of $6,463.51, and all costs of suit, the plaintiff has appealed.

For some years the State of Louisiana, through the Department of Highways, has been in the process of constructing and widening State Route C–1500, known as the Airline Highway, running from a point in St. Landry Parish to Canal Street in New Orleans and forming a part of the state and national highway systems. Defendant's property faces on the Prairieville-Nesser Highway which, when completed, will form a link of the Airline Highway. On June 10, 1947, the plaintiff instituted proceedings in the District Court, Parish of Ascension, to expropriate two parcels of ground belonging to the defendant, one of which is involved in the present suit. At that time there was pending before the same court the first of the expropriation suits wherein land for the Prairieville-Nesser Highway was sought, and action was delayed in the suit filed June 10, 1947, against the defendant pending the outcome of the above proceeding, which was adjudicated by this Court in June, 1948. See State v. Cooper, 213 La. 1016, 36 So.2d 22. Before trial could be had in the suit involving the defendant's lands, the Legislature enacted a

law Act No. 325 of 1948, LSA–RS 19:1 et seq., regulating the procedure in expropriation cases, and the provisions of that act made it necessary to amend the pleadings and orders of court in the then pending suit so as to conform to the new procedure. The plaintiff instead filed this proceeding (as well as another, involving the other piece of defendant's property), and shortly thereafter, on plaintiff's motion, judgment was rendered in the district court dismissing the previous suit against the defendant.

With respect to defendant's primary defense, namely, that there is no necessity for taking his land since the highway need not be so wide as planned, a decision adverse to this contention was rendered in State v. Cooper, supra, and the point is not seriously urged here; furthermore, in view of defendant's failure to file his answer timely, he is presumed to have waived all defenses except claims for money as compensation and as damages. LSA–RS 19:6, 19:7. The sole question for our determination, therefore, is the value of the land to be expropriated and the damages, if any, the defendant would suffer as a result thereof. It is the plaintiff's position that the value at the time of the filing of the original expropriation suit against the defendant must govern, and that the defendant was in bad faith in subsequently establishing a business on the land, a parcel of which he knew was required for highway purposes; the defendant contends that the plaintiff abandoned its first suit, and that the value of the property at the time of filing of the second suit is the criterion for awarding compensation.

The property, a parcel of which is here involved, was acquired by the defendant on February 23, 1946, for the price of $1,200, and is located in or near Prairieville, an unincorporated village. It has a total area of some three and a half acres with frontage of 205 feet on the Airline Highway—which highway at present consists of a twenty-foot concrete slab but under the project now in process of construction will have a roadway between the existing concrete pavement and the defendant's remaining property of the type known as a blacktop surface road. At the time the first proceeding was instituted against the defendant (June 10, 1947), the land was idle and unimproved, and had thereon a fence of barbed wire. During the early part of 1948 the defendant laid out a baseball field on his acreage—which field encroaches on the property of his neighbor, Thomas A. White, but apparently with the latter's permission or sanction—and erected, with the help of local people sponsoring the project, a wooden barricade 6 feet high and some 380 or more feet in over-all length, built on irregular lines so as to screen the field from the highway. During about six months of the year, weekly baseball games between the local team and visiting players are held for an admission price of fifty cents. More than one-third of the fence stands on adjoining land on which the plaintiff has a

right-of-way, acquired in April, 1947, from the owner, Thomas A. White. There is no bridge giving access to the highway from the ball park; those attending the games park their cars in the rear of a nearby barroom and walk across the property of White. The barroom and land on which it stands also belong to the defendant, and the expropriation of that strip is the subject of a companion proceeding now pending here on appeal. State v. Landry, La.Sup., 53 So.2d 232.

The defendant contends that expropriation of the front strip of his land will totally ruin the business of his baseball park, and will render unsuitable for such a venture the land remaining, in that it is insufficient; and places a value of $6,000 on the front fractional part of an acre (based on an alleged profit of some $1,100 in 1948 computed at a life expectancy for the business of five years), a loss in value of $1,250 to the remainder of his land, a loss of $474.-06 for the destruction of the wood fence and $40.80 for the destruction of the barbed wire fence, plus a damage of $300, the amount required to construct two bridges to give access to his remaining property from the proposed service road. His experts, affirming that the business is an integral part of the value of this parcel, agree on an appraisal of $5,817.95 by a mathematical process based on the net income from the business for 1948. However, as to the value of the land itself, the defendant offered no proof whatsoever. The only

evidence in the record on this point is that offered by plaintiff's experts, who testified that at the time of their first appraisal in 1947, the land was worth $340 an acre, or $128 for the strip sought, and agreed that today it might be worth a top price of $475 to $500 an acre, or $188 for the .376 of an acre.

■■ The rule is well settled that the measure of value of property expropriated for public use is the market value of the property at the date of institution of the expropriation suit. See Louisiana Ry. & Nav. Co. v. Sarpy, 125 La. 388, 51 So. 433; New Orleans Ry. & Light Co. v. Lavergne, 138 La. 949, 70 So. 921; Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854, and cases therein cited; City of New Orleans v Moeglich, 169 La. 1111, 126 So. 675; Louisiana Highway Commission v. De Bouchel, 174 La. 968, 142 So. 142; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Ouachita Parish School Board v. Clark, 197 La. 131, 1 So.2d 54; Louisiana Highway Commission v. Davis, 204 La. 624, 16 So.2d 129; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914. But since the State has delayed the trial of this case for such a long time, and elected to file separate proceedings for each parcel of ground and to dismiss its original suit, the first proceeding is to be considered abandoned, and as though it had never been filed. La.Const. of 1921, Art. 1, Sec. 6; Lane v. Ferre, 147 La. 796, 86 So. 186. Of necessity, therefore, the value of the

land at the time of the filing of the second suit will control.

■ A careful examination of the exhibits, considered in conjunction with testimony in the record, unmistakably shows that there is sufficient land remaining for the relocation of the ball park—which must be moved in any event, since as presently laid out it encroaches on land over which the plaintiff has owned a right-of-way since 1947. One of the plaintiff's experts, a Registered Civil Engineer experienced in planning and laying out ball fields (among these being the field at Louisiana State University), prepared sketches showing an arrangement of the field whereby the same or greater distances would be available as those now being utilized. Other testimony convinces us that the remaining land is suitable, being all flat, open country with a few trees on the northeast border. There is nothing in the record to indicate that the property would be depleted in value because of the loss of the front strip. Moreover, the major portion of the damages here sought are not founded on revenues of the baseball business itself, but on the defendant's averment that during six months of the year the business of the baseball park "is a source of large crowds from which respondent enjoys a remunerative business and that the said crowds attending said baseball games over the weekend provide a profitable business for the night club, club rooms, barroom, gasoline filling and automobile service station business" situated on defendant's other parcel, and that the ball field "enjoys business because of its proximity" to the barroom. In other words, defendant's claim is not for the loss of the baseball field but for the loss of an attraction which draws business to his other enterprise, for which he is receiving full value in the companion proceeding mentioned above. In any event, it is not clear from the record exactly what profits were actually derived from the activities of the ball park as a separate project.

■■ The claim for the destruction of the fences cannot be allowed, since it is only necessary that they be moved. As to the cost of relocating these fences, the defendant offered no proof. We need not pass on the necessity of furnishing a bridge to the defendant, contested by the plaintiff, since he has failed to prove the cost of such a structure and states that he has no idea what the requirement would be on a new highway. As to this item, therefore, the defendant must be nonsuited.

For the reasons assigned, the judgment of the District Court is amended by reducing the amount awarded the defendant for the land expropriated to the sum of One Hundred Eighty-eight ($188) Dollars, and dismissing his claim for construction of bridges as of nonsuit; in all other respects the judgment is affirmed. Costs of this appeal are to be borne by the defendant.

On Application for Rehearing.

PER CURIAM.

Finding no error in the opinion herein, the application for a rehearing is refused. However, in view of the contention of counsel for defendant that our decree is ambiguous and in order to avoid the possibility of confusion, we recast the judgment so as to read as follows:

For the reasons assigned, the judgment of the district court is amended by reducing the award in favor of the defendant to $188.

It is further ordered that defendant's claims for destruction of fences and the construction of bridges be dismissed, the latter as of nonsuit.

The costs of this appeal are to be borne by defendant.