133 So.2d 180 (1961)
STATE of Louisiana, through the Department of Highways,
v.
HEDWIG, INC.
No. 253.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1961.
Rehearing Denied October 9, 1961.
Certiorari Denied November 29, 1961.
*181 D. Ross Banister, Glenn S. Darsey, Braxton B. Croom, Chester E. Martin, Jesse S. Moore, Jr., Baton Rouge, for plaintiff-appellant.
Clem S. Sehrt and Edward J. Boyle of Sehrt & Boyle, Philip J. Foto, New Orleans, for defendant-appellee.
Before REGAN, YARRUT and SAMUEL, JJ.
SAMUEL, Judge.
Pursuant to the provisions of LSA-R.S. 48:441-460, this suit was instituted by the State of Louisiana, through the Department of Highways, for the expropriation for highway purposes of certain property owned by the defendant. Title was taken on October 29, 1959, at which time plaintiff deposited in the registry of the trial court the sum of $190,000.00, being the amount it had estimated to be just and adequate compensation therefor.
The property expropriated was one square of ground, wholly unimproved, situated in the City of New Orleans in that subdivision known as Metairie Park, which square is bounded by Pontchartrain Boulevard, Florida Avenue, Avenue "C" and Edison Street, and measures 240 feet on Pontchartrain Boulevard, 840 feet on Florida Avenue, 840 feet on Edison Street and 240 feet on Avenue "C". At the time of the taking the square had been subdivided (in 1925), on paper only, into twelve lots, none of which had been sold. With the exception of Pontchartrain Boulevard, the streets had not been graded nor had utilities been installed, and the property, which was covered with bushes, small trees and undergrowth, and required filling, had not been cleared or filled.
In its answer the defendant claimed the sum of $350,000.00 for the property. The trial court fixed the amount to be paid at $290,000.00. Plaintiff has appealed praying that the award be decreased to $190,000.00, the original deposit, or alternatively, to an amount not to exceed $208,260.00. Defendant has answered the appeal praying that *182 the award be increased to $350,000.00. The sole question presented to us is the amount of compensation to be paid the defendant.
The measure of compensation which must be paid the owner of property expropriated is the market value of such property at the time of the taking and in the condition in which it then stood. State v. Landry, 219 La. 721, 53 So.2d 908; City of Alexandria v. Jones, 236 La. 612, 108 So. 2d 528; Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491; State, Through Department of Highways v. Givens, La.App., 129 So.2d 468.
Fundamental to the concept of value is the theory of highest and best use, i. e., that use which, at the time of the taking, is most likely to produce the greatest net return. In the instant case all witnesses agree that the highest and best use of the property was as a subdivision for residential purposes.
The property was located next to and across Avenue "C" from portions of Lakewood Country Club. In connection with the taking of property for the same highway involved in the instant case, part of the country club's property had previously been sold to the State and another portion to certain Texas interests, which latter portion was subdivided by the purchaser into 98 lots and called Lakewood North Subdivision. These 98 lots were placed on the market on October 24, 1959, and disposed of by agreements to purchase on or before October 27, 1959, before any off-site improvements had been made on the property, the contracts being conditioned upon the completion of the improvements. The southern extremity of Lakewood North is 400 feet north of the northern extremity of the property involved in the instant case, the two properties being on opposite sides of Avenue "C".
Each side offered two expert witnesses to prove market value.
Mr. Waguespack, realtor and a witness for the defendant, used as comparables the sales of the individual lots in Lakewood North where the prices ranged from $200.00 to $245.00 per front foot, and was of the opinion that the subject property was better located due to the fact that it could be reached directly from Pontchartrain Boulevard. He felt that the disposal of all of the lots in Lakewood North over a period of only a few days, plus the facts that many of such purchasers were professional real estate men and, in several instances, that some lots had been re-sold at a profit of $2,000.00, an acceleration in value in excess of 15%, even before the acts of sale had been passed, indicated not only a great demand but also that the lots had been sold below their market value. He testified that the best use of the subject property was as a subdivision containing 28 residential building sites, 14 fronting on Edison Street and 14 fronting on Florida Avenue, each 60' front by 120' in depth, with the square containing the same off-site improvements as Lakewood North. He set a value of $285.00 per front foot on the lots facing Florida, a gross value of $239,400.00, and of $250.00 per front foot on those facing Edison, a gross value of $210,000.00, or a total gross value of $449,400.00. He estimated it would cost $117,600.00 to install the improvements and also gave a lesser amount for such improvements predicated upon the owner or owners of the square to the north contributing one-half of the Edison Street cost, which latter amount is too speculative and uncertain for us to consider. His opinion of the net market value on October 29, 1959, using his acceptable estimate of cost, was $331,800.00.
Mr. Warner, realtor and a defendant witness, also regarded a re-subdivision of the property into 28 lots, 14 fronting on Edison and the other 14 on Florida, as most advantageous. He believed the property in suit was better than Lakewood North due to location and accessibility and placed on the former a value of $275.00 per front foot on Edison and $300.00 per front foot on Florida, a gross total of $483,000.00. From this he deducted the cost of improvements, *183 similar to those in Lakewood North, and surveys, which total cost he estimated would be $101,780.00. The resulting figure, rounded out for convenience and his opinion of the net market value, was $381,200.00.
Mr. Newell, realtor and a witness for plaintiff, regarded as the best use of the property a re-subdivision into 28 60' by 120' lots, four to face Pontchartrain Boulevard, at $180.00 per front foot, twelve to face Edison Street, at $150.00 per front foot, and twelve to face Florida Avenue, at $155.00 per front foot, for a total gross valuation of $262,800.00. He estimated the cost of improvements and certain profits at $72,136.00, and by subtracting the latter total from the former reached a figure of $190,664.00, which in his opinion was the market value of the property. He used four comparables, individual lots all facing Pontchartrain Boulevard, and did not use Lakewood North as a comparable because he felt that the subject property is not large enough to be developed into a neighborhood sufficiently exclusive to bring higher prices. His price contemplates the purchase of the entire subject square by one purchaser instead of a selling of individual lots to separate and different purchasers. The figures he gave on the cost of improvements do not include some of the facilities used by defendant's expert witnesses and he added 12% of the total valuation to his costs as overhead profit for selling.
Mr. Derbes, realtor and a witness for plaintiff, estimated the market value of the property at $208,260.00 based on the twelve lot subdivision as it existed at the time of the taking. His valuation contemplates a single sale to a subdivider, developer or contractor intending to build and sell residences. Comparables used by this witness include the acreage sale on September 18, 1959, by Lakewood Country Club of that portion of its property subsequently developed into Lakewood North. That sale was of 21.577 acres and the price was $496,425.00, or $23,028.00 per acre. The subject property contains only 5.925 acres. However, he said that the subject property is more valuable per acre for two reasons: it is smaller and therefore the demand should be greater because there are more buyers who are in a position to purchase smaller properties, and a portion of the subject property does front on Pontchartrain Boulevard, which is improved. He reached his final figure by using a valuation of $45,000.00 per acre or, divided into twelve lots, $144.00 per front foot on Pontchartrain Boulevard and $121.00 per front foot on the other two streets. He did not use the sales of lots in Lakewood North as comparables because he was of the opinion that the individual lots, being finished products, were not comparable to raw acreage.
Plaintiff contends that the use of the agreements to purchase the Lakewood North lots and their admission in evidence were improper because the sales of those lots were made after the proposed highway development became public knowledge. It relies upon the case of State, Through Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93. We do not agree with the contention.
The cited case is not apposite. Here the testimony makes it quite clear that the construction of the proposed highway would decrease, rather than increase, the value of the property. Nor does the fact that the acts of sale of Lakewood North lots were passed several months after the date of the taking of the subject property render inadmissible the purchase agreements upon which those sales were based. The acts of sale were passed much later than is usually the case because the off-site improvements had to be completed prior thereto. The agreements do accurately reflect the purchase prices of the lots at the time the agreements were entered into.
Plaintiff further contends that a valuation of the property by defendant's expert witnesses based only upon the ultimate sale of improved lots to individual purchasers is improper; and that a projection *184 of the property into a larger number of lots than actually existed on the date of the taking is also improper. We agree with the first contention and disagree with the second.
In the case of Caddo Parish School Board v. Willer, 227 La. 201, 207, 78 So.2d 833, 835, the court said:
"But compensation in expropriation proceedings cannot be based on what might have been derived from the property if the condemnation proceedings had not intervened."
The test in both Caddo Parish School Board and in City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445, is what a prospective purchaser for subdivision purposes would have been willing to pay for the property. Applying this rule to the instant case, such a prospective purchaser would, as a matter of course, compute the manner in which he could ultimately sell the property in order to bring the highest possible price, regardless of any previous subdivision plan. He would be willing to pay such a price as would be indicated by this figure, all of his costs, including improvements, and the profit he expected to make. It was therefore necessary and proper for the expert witnesses to consider the ultimate sale of the property by individual lots, but only in order to arrive at a conclusion as to what such a prospective purchaser would be willing to pay for the raw acreage as a whole.
We are in agreement with the trial court who was of the opinion that defendant's witnesses had valued the property too high and plaintiff's witnesses too low. He awarded $290,000.00 for the square in its unimproved state at the time of the taking and, considering all of the testimony, we feel that this is fair and just compensation.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.