CHASEZ, Judge.
This suit was instituted by the State of Louisiana, through the Department of Highways, pursuant to the provisions of LSA-R.S. 48:441 et seq., to expropriate for highway purposes certain property owned by the defendant, Miss Marcelle Colomb. *281 On May 24, 1965 the plaintiff deposited in the registry of the court the sum of $22,-970.00, its estimate of the value of the property taken, and the property was ordered expropriated on May 26, 1965. The defendant withdrew this depositwa The defendant withdrew this deposit and exercised her rights to contest the State’s valuation of the expropriated property. In her answer and amended answer to plaintiff’s suit she claimed the sum of $53,200.00 for the property, plus an additional $2,700.00 as expenses of appraisal. Judgment was subsequently rendered after trial on the merits, fixing the amount to be paid at $27,564.00. Judgment was also rendered fixing the fees for the experts who testified at the trial, in the sum of $500.00 each for services rendered prior to trial and for $100.00 each for testifying at the trial. Defendant has taken this appeal, praying that the award be increased to $50,000.00, plus an increase in expert witness expenses and fees to $2700.00. The plaintiff has not answered the appeal.
The property taken totals 100,054 square feet or 2.297 acres and is part of a larger 5.56 acre tract owned by the defendant. It is located in St. Bernard Parish, between two subdivisions known as Chalmette Vista and Battleground. This 5.56 acre tract is bounded on the south by Good Children Street, on the north by unimproved land, and on the east and west by the two subdivisions. The expropriated land itself is unimproved, however, it is high, well drained ground and all utilities are available. The sole question for our determination herein is the value of the land taken.
In the State, Through Dept. of Highways v. Hedwig, Inc., 133 So.2d 180, La.App. 4 Cir. 1961, cited by both parties, we made these statements as to the rules of law to be applied in these cases:
“[1] The measure of compensation which must be paid the owner of property expropriated is the market value of such property at the time of the taking and in the condition in which it then stood. State v. Landry, 219 La. 721, 53 So.2d 908; City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528; Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491; State, Through Department of Highways v. Givens, La.App., 129 So.2d 468.
“[2] Fundamental to the concept of value is the theory of highest and best use, i. e., that use which, at the time of the taking, is most likely to produce the greatest net return.”
All witnesses agree that the highest and best use of the expropriated property was as a subdivision for residential purposes. There was disagreement however among the witnesses as to the proper method for evaluating this land as potential subdivision property.
The plaintiff offered one expert witness to prove market value and the defendant offered two.
Mr. Max Derbes, realtor, testified as plaintiff’s expert witness. He offered two methods of appraisal or appraisal approaches whereby he reached a valuation of the subject property. The first he called the market data approach, or comparison of comparable acreage sales. The second he referred to as the Development Prospectus approach, whereby sales of subdivided lots in blocks and in single sales, were used. His net result in both approaches was a valuation of approximately $12,000.00 per acre.
Mr. V. G. Warner and Mr. Eugene Aschaffensburg, realtors, testified in behalf of defendants. Both of these witnesses employed the development prospectus approach and rejected the market data approach used by Derbes, as they were of the opinion that comparable sales of acreage did not reflect the true worth of the subject property which they stated was easily and ideally adaptable for subdivision purposes.
Mr. Aschaffensburg placed an evaluation of $50,000.00 on the property; Mr. War *282 ner found $53,200.00 to be the true worth of the property.
The trial judge made these comments in his reasons for judgment, in support of his decision to accept Mr. Derbes evaluation of the subject property:
“All of the appraisers agreed that the highest and best use of the property at the time of the taking was for potential sub-division purposes. There were no improvements on the property.
“The proper measure of compensation in an expropriation suit is the market value of the property on the date of the taking. Market Value has been defined by our courts as that price agreed on between a willing and informed buyer and a willing and informed seller, under usual and ordinary circumstances.
“The plaintiff contends that the acreage approach to value should be used and relied on by the Court.
“The defendant contends that the lot sales approach to value should be used and argues that the highest and best use of this property would be to sell one lot at a time and therefore they are entitled to be compensated for the aggregate of the prices which would have been realized through such sales.
“The basic issue was answered by our Supreme Court in the case of Parish of Iberia v. Cook, [238 La. 697] 116 So.2d 491, in which the Court said:
“We readily adhere to these principles. In determining the market value of property expropriated, it must be conceded that it is not merely the value for the use for which it has been applied by the owner that should be taken into consideration. The possibility for its use for all available purposes for which it is adapted and to which it might in reason by applied should be considered. The ultimate test of value in that respect is what men of wisdom and prudence and having adequate means would devote to the property if owned by them. On the other hand, possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings as to have no perceptible effect upon present market value should be excluded from consideration. In speaking of adapted uses of the property, it is meant the use of the property in its present condition as a whole. The owner’s plan or hopes for the future should be held completely irrelevant, being more often illusory than real. Situations may arise where land is actually available for commercial development, as subdivided lots. The measure of compensation in such instances should not be the aggregate of the prices of the lots into which the tract could be divided, for so many contingencies may intervene as to make such measure of compensation too uncertain and conjectural. The test is the market value of the land as a whole, taking into consideration its value for building purposes of a not too speculative nature.
“Our courts have further held that for property to be properly classified and valued as subdivision property its potential use for subdivision purposes must be reasonably prospective as opposed to remotely prospective. See State [Through Dept. of Highways] v. Mouledous, [La. App.] 200 So.2d 384.
“In the case at bar, the evidence convinced me that at the time of the expropriation the use of defendant’s property for subdivision purposes was not reasonably prospective. There was no evidence introduced to indicate there was an intent on the part of defendant to subdivide her property.
“The defendant did not testify. There was no evidence introduced of the property having been surveyed and platted into lots with streets and alleys. The land had not been cleared.
*283 “In fact, the evidence reflected that the defendant had owned this property since 1936 and nothing to the Court’s knowledge has ever been done to make a subdivision for homesites of the property in question.
“It would be purely guess work on my part, based on speculation and conjecture, for me to conclude that at the time of the taking the defendant was planning to subdivide her property within the reasonably near future.
“Since the potential use of defendant’s property as a subdivision was only remotely prospective, and the land was not in the process of being put to that use, the appraisers for the defendant used an incorrect procedure for basing their approach.”
We are of the opinion that the trial judge was in error in this conclusion. As he himself stated, the expert witnesses for both parties agreed that the highest and best use of the property at the time of the taking was for poténtial subdivision purposes. Further the evidence is clear that the subject property was well suited for subdividing as it was shaped so that_ the extension of one already existing roadway made it easily accessible throughout. It was located directly between two older developed subdivisions. Utilities were readily available, the ground was high, well drained and required no fill or leveling. We do not find that under these facts use as a subdivision was among those “possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings, * * * ” as to make this use remotely prospective. Thus we conclude that the second approach used by Mr. Derbes, and the only approach used by Mr. Aschaffensburg and Mr. Warner, the Development Prospectus approach, most closely realized the true value of the subject property.
We note that in implementing the Development Prospectus approach, all three appraisers accepted the sum of $40,500.00 as the amount necessary for development costs, that is, the sum necessary to convert the property into subdivided salable lots. They differed slightly however as to their estimate of the ultimate sale price of such lots per front foot. Mr. Derbes found that figure to be $100.00 per front foot. Mr. Aschaffensburg found it to be $105.00 per front foot; Mr. Warner found it to be $110.00 per front foot. After examining the comparable sales in the record before us, we are of the opinion that the figure used by Mr. Aschaffens-burg most closely arrives at the realistic value of these lots. In any event, both parties admit that this point is not crucial, inasmuch as the agreed difference between the adjusted appraisal figure offered by Mr. Derbes, $27,564.00 and the figure offered by Mr. Aschaffensburg, $50,000.00, involves the percentage allowed by each for developers’ or builders’ discount.
Mr. Derbes testified that in reaching his final appraisal value of the land, he deducted from what he found to be the gross value of the land, 25% for developers’ profit and an additional 10% for selling and advertising costs. He assumed that in order for the land to be marketable it would be necessary to sell it to a developer who would purchase it only for the 35% discount figure.
Mr. Aschaffensburg and Mr. Warner both allowed only for a 10% builders’ discount from the gross value. They were of the opinion that under the existing market condition at the time of the taking, an owner would be ill-advised to sell to a developer at a much higher discount when the property was so readily suited to subdividing at minimal risks.
It appears from the testimony of the three appraisers that the crucial question which the owner must consider in deciding to sell at a higher discount to a developer rather than the lower discount to a builder involves risk of non-salability of the lots. In other words, should the *284 owner expand the stipulated amount herself for improving the property, then run the risk of not being able to sell the lots to a builder, or simply sell the land at a much lower figure to a developer who would incur the improvement and development costs himself. We are convinced from the testimony of the expert witnesses that in this case, given the existing market conditions, a well-informed owner would be best advised to develop the property herself and thus eliminate the high developer’s profit as the risk of eventual non-salability was minimal. The proper measure of compensation in these expropriation suits involves the price which would be agreed upon by a willing and informed buyer and seller given the existing conditions and circumstances. For the reasons which we have discussed above, we are of the opinion that this figure is the one offered by defendant’s appraiser, Mr. Aschaffensburg, which is computed on the 10% builders’ discount rather than the 25% developers’ profit and 10% advertising and costs figure.
Finally we reach appellant’s claim for an increase to the sum of $1,350.00 for each of her appraisers for their fees for preparing their appraisal reports. In proceedings of this nature, fees to be paid experts depend much on the time spent and the extent of their examination of matters on which they express an opinion, and no absolute rule can be fixed as to the amount to be allowed as fees in all cases, LSA-R.S. 13:3666, Recreation and Park Commission v. Perkins, 231 La. 869 (1957), 93 So.2d 198. From the testimony presented at trial, there is no showing that the trial court abused its discretion in the awards of $500.00 each for services rendered prior to trial and for $100.00 each for testifying at trial, and therefore its judgment thereof shall be affirmed.
For the reasons hereinabove set forth, the judgment appealed from is amended to award the defendant the sum of $50,-000.00 for the property taken or an additional sum of $22,436.00, and in all other respects is affirmed. All costs of this court shall be paid by plaintiff.
Amended, and as amended, affirmed.