SARTAIN, Judge.
In this expropriation proceeding defendant-landowner appeals from a judgment of the district court urging that the trial judge erred in permitting plaintiff to expropriate a servitude 30 feet in width across her property, in failing to consider as compar-ables for severance damages sales by defendant of servitudes over the same and a neighboring tract, and that the amount awarded as severance damages was inadequate. Plaintiff’s answer to the appeal seeking reversal of the trial court’s decision awarding severance damages is questioned by defendant as to timeliness. The result reached herein by us on the question of severance damages renders unnecessary any further discussion on this point.
The property expropriated crosses a tract of land comprising some 200 acres. The tract itself is severed by U. S. Highway 61. The parcel particularly effected by this servitude contains 125 acres and is located west of Highway 61. It is conceded that the balance of the tract of 75 acres lying east of U. S. Highway 66 remains unaffected.
All parties agreed that the highest and best use of the property over which the servitude will cross is for industrial purposes. For the most part the land is clear, high and well drained. Each of the expert witnesses placed a value of $1250.00 per acre. The primary dispute between the parties is the question of severance damages. Plaintiff’s witnesses accorded no severance damages whereas defendant’s witnesses testified that the 125 acres would be seriously damaged by the servitude herein sought.
Appellant’s first assignment of error concerns itself with the question of the necessity of the plaintiff for a servitude of 30 feet in width across the southerly portion of defendant’s land. Defendant argues that plaintiff already enjoys a similar servitude of 30 feet which presently contains a 24 inch pipe line and that the plaintiff should be required to install its proposed 30 inch high pressure gas line in the same servitude thus eliminating the necessity of acquiring an additional servitude.
An examination of the record and particularly the testimony adduced by plaintiff clearly shows that the discretion accorded to the expropriating authority in the determination of the location and extent of a proposed servitude was not abused.
*752 Plaintiff countered defendant’s contention as to necessity by showing that the additional 30 foot servitude was warranted by sound engineering practices which included considerations of safety, maintenance and installation. Plaintiff’s testimony in this regard was corroborated by a witness of another pipe line who testified that for the same reasons their practice was to lay paralleling pipe lines at a minimum distance of 25 feet. Briefly, for safety reasons the buffer zone between two parallel lines creates additional insulation and minimizes the possibility of a double failure or break occasioned by a failure on one of the lines. Further, when it is necessary for maintenance reasons to work or repair one line extreme caution should be exercised so that the heavy equipment involved will not come into contact with or damage the second line. Sound reason dictates to us that in the event of an explosion in one of the lines the distance between paralleling lines of the type herein considered is from a safety point of view of a vital importance. For the general rule applicable to the discretion vested in an expropriating authority we quote from our decision in Central La. El. Co. v. Covington & St. Tammany L. & I. Co., La.App., 131 So.2d 369, 375:
“Regarding the general subject matter of expropriation the jurisprudence of this state has evolved certain fundamental concepts and rules which have been repeated on innumerable occasions. One such cardinal principle is that in the location of rights-of-way considerable discretion is vested in the expropriating authority and the courts will not disturb or interfere with the exercise thereof i'n the absence of fraud, bad faith or conduct or practices amounting to an abuse of the privilege. 18 Am.Jr. Eminent Domain, Page 735, Section 108; Kansas City, S. & G. Ry. Co. v. Vicksburg, S. & P. R. Co., 49 La.Ann 29, 21 So. 144; Fuselier v. Police Jury of Parish of Iberia, 109’La. 551, 33 So. 597; Board of Levee Com’rs, Orleans Levee Dist. v. Jackson’s Estate, 113 La. 124, 36 So. 912; Louisiana & A. Ry. Co. v. Louisiana Ry. & Nav. Co., 125 La. 756, 51 So. 712; Board of Com’rs of Tensas Basin Levee Dist. v. Franklin, 219 La. 859, 54 So.2d 125; City of Westwego v. Marrero Land & Improvement Ass’n, 221 La. 564, 59 So.2d 885; Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901; Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488; City of Charlotte v. Heath, 226 N.C. 750, 40 S.E.2d 600, 169 A.L.R. 569; Johnson v. Consolidated Gas, Electric Light & Power Co., 187 Md. 454, 50 A.2d 918, 170 A.L.R. 709.”
The next assignment of error by appellant concerns the question of severance damages and this in turn directs us to an evaluation of the testimony of the expert witnesses. Plaintiff’s two witnesses, Mr. Chester A. Driggers and Mr. Julius A. Bahlinger, III, testified that the existence of a second pipe line across the subject property did not result in any severance damages. Mr. Driggers testified that defendant was entitled to receive the sum of $2125.00 representing $1600.00 for the permanent servitude and $525.00 for a temporary servitude, to be used by plaintiff during the period of construction. Mr. Bahlinger testified that the defendant was entitled to receive $2110.00, representing $1600.00 for the permanent servitude and $510.00 for the temporary servitude. Both of these witnesses were of the opinion that the permanent servitude amounted to an 80% taking of the property comprising the servitude itself. Their arithmetic consists of 80% of 1.6 acres at $1250.00 per acre or $1600.00 for the servitude itself.
Defendant’s witnesses were Mr. Verdie Reese Perkins and Mr. Heidel Brown. Both of these witnesses testified that the servitude amounted to a taking of 100% of the land included therein or 1.6 acres at $1250.00 per acre or $2000.00. Neither gave defendant any compensation for the temporary servitude. Mr. Perkins testified that the balance of defendant’s tract *753 of 125 acres was injured to the extent of $100.00 per acre and that defendant should be compensated as for these severance damages in the amount of $12,500.00. Mr. Brown testified that 80 acres of defendant’s 125 acres were damaged to the extent of $100.00 per acre and that defendant should receive as severance damages the additional sum of $8000.00. Thus, the total damages assessed by each of the four appraisers are as follows: Mr. Driggers, $2125.00; Mr. Bahlinger, $2110.00; Mr. Perkins, $14,500.00; Mr. Brown, $10,000.00.
The trial judge for oral reasons assigned disagreed with the testimony of defendant’s witnesses as to the extent of severance damages and rendered judgment in favor of plaintiff in the total amount of $5050.00, representing $1800.00 for the permanent servitude, $250.00 for the temporary servitude, and $3000.00 severance damages for the remainder of the property. He did not detail the reasons for his assignment of $3000.00 as severance damages. Apparently, in the exercise of his discretion with respect to the item of severance damages he chose not to follow the testimony of any of the aforementioned witnesses for his sum of $3000.00 for this item is $3000.00 more than plaintiff’s witnesses felt defendant was entitled to receive and $5000.00 less than the lowest of defendant’s witnesses’ testimony.
It is axiomatic that in a trial of a case such as this much discretion is granted to the trier of fact in an evaluation of and the weight to be given to the testimony of each witness and his findings of fact will not be disturbed on appeal unless such findings are clearly in error.
It is also well established that as to expert witnesses the testimony of each will be accorded equal weight when such testimony appears to be grounded on well established facts and is supported by sound reasoning and good judgment.
However, as shown above there is no middle ground between the testimony of plaintiff’s and defendant’s respective witnesses on the issue of severance damages. They are poles apart. In our opinion the testimony of defendant’s witnesses appear to be the most reasonable and logical and are entitled to greater weight than is the testimony of plaintiff’s witnesses. Our decision in this respect is based upon the fact that plaintiff’s witnesses, though recognized as competent appraisers otherwise admittedly did not possess the vast experience, know how and knowledge of the uses, development, potentials of industrial properties as did the witnesses of defendant. Plaintiff’s witnesses acknowledged that neither had ever handled the listing or sale of industrial property. On the other hand Mr. Brown had handled acquisition of plant sites for W. R. Grace & Co., Reynolds Metals, International Harvester, McKesson &' Robbins and to North Baton Rouge Development Company to the north of Baton Rouge; and, Wyandotte Chemical, Olin Revere Metals, Allied Chemicals, U. S. Rubber, Borden Chemicals, Monochem, Goliad, Shell Chemicals, Texaco, Gulf Oil, N. J. Corporation and Gramor Corporation to the south of Baton Rouge. Mr. Perkins also was a realtor of considerable experience in the handling of transactions involving industrial properties. The testimony of both clearly convinces us that the second pipe line across defendant’s property will in fact result in damages to the balance of the property. Both testified from experience that the existence of one pipe line creates a distinguishable factor that causes industry to look for other sites. Both were definite in their testimony that the existence of a second line would aggravate the problem. For cases involving a second pipe line see United Gas Pipe Line Co. v. Nezat, La.App., 160 So.2d 367 and Veillon v. Columbia Gulf Transmission Co., La.App., 192 So.2d 646.
The opinion of an expert not supported by sufficient facts and experience is *754 not to be weighed heavily. However, when such opinion is clearly supported it must be given weight and cannot be ignored or minimized unless the record contains justification for the same. These witnesses based their decision on the fact the existence of one or two pipe lines will deter industry’s purchase of the property for one, two, three or more years and thus while the property is lying idle defendant is being damaged by the loss of return on the value of their property. A concrete example of just such a situation was given by these witnesses and the subject matter remains in the record uncontroverted. These witnesses testified that from their experience industry prefers to eliminate the possibility of problems incidental to the existence of a servitude across their plant site properties recognizing that the servitude must be maintained, the pipes inspected and any failures repaired. Further, the existence of these high pressure pipe lines will limit the use of property situated adjacent to the servitude, such as the construction of buildings or the movement of heavy equipment.
The question of the establishment of a second line as to the extent the same may further damage property already damaged by a previous line is involved and we submit difficult to determine. However, we do not choose to say there are no damages as contended by plaintiff’s witnesses or even $3000.00 damages as held by the trial judge for in the latter instance we like the trial judge would be substituting our own opinion for that of the experts. Rather, we choose to adopt the appraisal of Mr. Heidel Brown because his appraisal appears to be sound in reasoning and experience. The principal difference between Mr. Brown’s appraisal and that of Mr. Perkins is that Mr. Perkins attributed severance damages to the entire remaining 125 acres whereas Mr. Brown testified that he limited his damages to the same extent of $100.00 per acre but only to 80 acres, reasoning that the balance of the property located the furthest from the two servitudes would be the least damaged if any. He further adjusted for damages occasioned by the first pipe line and damages resulting from the second and instant pipe line. Accordingly, we conclude that the balance of defendant’s property is damaged to the extent of $8000.00.
Defendant urges that the trial judge erred in his refusal to consider damages paid to defendant by previous utilities acquiring rights of servitude across the subject property. One such company was Gulf States Utilities and another was Colonial Pipe Line. These two servitudes parallel U. S. Highway 61 and the eastern boundary of defendant’s property. Defendant also contends that the trial judge erred in his failure to admit evidence of severance damages paid to another property owner in the vicinity of defendant’s lands. Following the trial judge’s exclusion of these transactions as comparables, evidence was offered under LSA-C.C.P. 1636. On this point the general rule is that com-parables of transactions between a willing buyer and a willing seller involving properties of a similar nature and near to the property expropriated is the best guide in determining the true value of the property sought to be taken. This rule, however, applies principally to the determination of the value of the land and generally has not been extended to the determination of severance damages. For in the determination of severance damages many factors, circumstances and conditions are present and vary from case to case. In Transcontinental Gas Pipe Line Corp. v. Tieman, La.App., 112 So.2d 724, this court rejected the use of a previous “damage release” as a comparable, notwithstanding the fact that the transaction offered concerned the same party and same property as in the case at issue. However, our reasoning there was that the record contained no evidence as to what particular damages were included in the prior transaction. In the case cited the opinion clearly reflects that the only evidence before it as to damages was the opinion of the experts. Accordingly it was held that the trial judge who admitted *755 the document into evidence was correct in not considering as comparable the transaction involving the release. Though the issue as to the use of comparables as an aid in determining severance damages was not raised or specifically ruled upon in the case of State Through Dept. of Highways v. Babineaux, La.App., 189 So.2d 450 the following language clearly indicates that the trial judge and the appellate court considered the use of a transaction considered comparable in the determination of severance damages, where at page 452 of the opinion is contained the following:
“The court’s award for the land taken was based upon its value as derived from comparable sales of similar properties; there was essentially little difference between the valuations of the subject property and of the land taken as between the three appraisers whose testimony was accepted. As to the severance damages, the Department’s witnesses testified that the ‘proximity’ damages because of the new highway right of way would be approximately 10Y2%; the landowner's expert (White) testified, based upon a comparable sale (the Evers transactions), that the remaining land suffered a 29% reduction in value while the remaining improvements sustained a 36% reduction.
In awarding the landowner a 162/3% reduction in the value of the remaining land and a 22j4'% reduction in the value of the improvements remaining, the trial court essentially accepted the testimony of the landowner’s expert (White), although reducing White’s estimate by adjusting the comparable transaction relied upon by him (the Evers sales) because of the greater severance damages shown to have been sustained by the Evers property because of the more onerous taking of the greater part of an already small back yard and the greater unsightliness of a 14-foot dirt barrier for the no-access Interstate Highway right of way.” (Emphasis Ours)
Frankly, we cannot see so vast a distinction between the use of sales of similarly situated properties as comparables to aid in determining value of the land sought to be taken and the use of a transaction where a landowner was paid for severance damages to property just as similarly situated as a comparable to aid in arriving at just and adequate damages to the remainder of the property under present consideration, so as to completely exclude the use of the latter. Admittedly the use of comparables for severance damage purposes might necessitate closer scrutiny before it is considered. This again is a matter that directs itself to the competency of the particular transaction to stand as a just and fair comparable which in turn directs itself to the trial judge to be accorded such weight as the individual circumstances justify. The burden of showing that the prior transaction wherein a certain amount was paid as damages is in fact comparable to the subject under consideration rests with the party endeavoring to use such comparable. Vague, general and indefinite language contained in an instrument purporting to compensate for severance damages should be accorded little if any weight. To state that it should be inadmissible and be given no weight does not recognize a substantial factor in transactions voluntarily entered into between an expropriating authority and landowner. We recognize that some landowners would prefer for tax reasons (and it probably makes little difference to the authority) to receive the bulk of their compensation as damages. On the other hand an expropriating authority should not be placed at a disadvantage for acceding to the request of the landowner who desires such an arrangement.
In expropriation litigation all parties must clearly distinguish between that portion of the total compensation pertaining to the value of the land taken and that portion attributable to severance damages. However, most transactions involving the acquisition of right of ways and servitudes are free and voluntarily entered *756 into and litigation is avoided. We would be hesitant to evoke a theory or rule of law that would tend to hamstring either party. But to unequivocally say that as a rule of law transactions involving similarly situated properties that also include severance damages are ipso facto inadmissible would in our opinion do injustice to all parties and ignore the day to day facts of life with respect to these particular types of land transactions.
An examination of our jurisprudence with respect to the use of comparables as an aid to guide in determining value of the land sought to be expropriated clearly reflects that the use of the transactions between expropriating authorities and landowners is in fact permissible under certain circumstances. The principal limiting factor permitting their use is the unavailability of other transactions not involving expropriating authorities. In Gulf States Utilities Co. v. Norman (Ct. of Appeal, 3rd Cir.), 183 So.2d 421 at 427 is contained the following:
“In Louisiana (unlike in many jurisdictions, Annotation, 85 A.L.R.2d 112 at 163, Section 10), a sale to an expropriating authority may be considered in reaching an opinion as to the value of other property taken; although such sale is not controlling, since being made under threat of expropriation it is not a willing seller transaction. State Through Dept. of Highways v. McDuffie, 240 La. 378, 123 So.2d 93; Orleans Parish School Board v. Paternostro, 236 La. 223, 107 So.2d 451; State v. Sauls, 234 La. 241, 99 So.2d 97; State v. Dowling, 205 La. 1061, 18 So.2d 616; State Through Dept. of Highways v. Dodge, La.App. 3 Cir., 168 So.2d 430; State Through Dept. of Highways v. Cannon, La.App. 1 Cir., 159 So.2d 49; State Through Dept. of Highways v. Caillier, La.App. 3 Cir., 157 So.2d 274; United Gas Pipe Line Co. v. Nezat, La.App. 3 Cir., 136 So.2d 76; State Through Dept. of Highways v. Carret, La.App. 3 Cir., 130 So.2d 447; State Through Dept. of Highways v. Bourque, La.App. 3 Cir., 127 So.2d 784.”
The same case at 183 So.2d 421, page 430 is found:
“In accord with the jurisprudence, this court has in similar circumstances, especially in the absence of more reliable comparable transactions, approved the use as comparable sales of conveyances to expropriating authorities as an aid to determine the actual market value of property taken. State Through Dept. of Highways v. Caillier, La.App., 157 So.2d 274; State Through Dept. of Highways v. Carret, La.App., 130 So.2d [447,] 448; State Through Dept. of Highways v. Bourque, La.App., 127 So.2d 784; see also: City of New Orleans v. Thieler, La.App. 4 Cir., 181 So.2d 56. We see no reason why we should not do so here. See also Louisiana Ry. & Navigation Co. v. Morere, 116 La. 997, 41 So. 236, and United Gas Pipe Line Co. v. Nezat, La. App. 3 Cir., 136 So.2d 76, where cases were remanded to consider evidence founded upon sales of rights of way to other expropriating authorities, held to be improperly excluded.”
It has been necessary for us to comment here on the use of comparables as to severance damages because defendant in brief and oral argument as on the trial of the case urged consideration for use thereof based on evidence introduced under LSA-C.C.P. 1636 when the trial judge precluded their introduction into evidence. However, our decision here as stated above is based upon the testimony of Mr. Brown as supported by Mr. Perkins. Neither of these two witnesses used such comparables in their determination of the amount of severance damages to the balance of defendant’s property.
For the above and foregoing reasons the judgment of the district court awarding defendant the sum of $3000.00 as severance damages is amended to increase the same by *757 $5000.00 or to the total sum of $8000.00 for such severance damages. In all other respects the judgment is affirmed all at ap-pellee’s cost.
Amended and affirmed.