FRUGÉ, Judge.
By this expropriation suit Central Louisiana Electric Company, Inc. (Cleco) seeks to condemn a servitude across defendant’s prime agricultural land for the construction of two side-by-side electric transmission lines. The district court granted the plaintiff’s demand for the servitude, fixing the landowner’s compensation at 75% of the acreage embraced by the servitude and 15% severance damages to the remainder of the landowner’s 114 acre tract. The defendant landowner has appealed, urging on numerous grounds the reversal of the condemnor’s successful acquisition of the servitude and, alternatively, an increase in the amount of damages. Cleco, by answer to the appeal, seeks to reduce the damages granted the defendant landowner by the trial court.
The subject property is located in Rapides Parish very near the city of Alexandria, Louisiana. The property’s best and highest use (high yield agricultural) and its per-acre valuation ($750.00) are undisputed. Over this property Cleco desires to construct two parallel electric transmission lines on a single 150-foot right of way. Each line will be of standard H-frame construction and each will be designed to carry 230,000 volts of electric current. The 150-foot servitude occupies some 14.6 acres of the landowner’s 114 acre tract, and within the bounds of this servitude a total of thirty poles will be employed to support the lines in question. In addition, at three locations guy wires will extend from the poles to anchor points located outside of the expropriated strip. One of these 230 kilovolt lines will run from the existing facilities of Cleco at St. Landry, Evangeline Parish, Louisiana, to plaintiff’s substation near the community of Rapides Station, Louisiana. The second line will extend from Toledo Bend Dam, a hydroelectric project located on the Texas-Louisiana border, to the same substation at Rapides. As noted above, the trial judge rendered judgment granting the prayed for expropriation and by this appeal the landowner seeks to reverse and modify his decision. We will consider the numerous points raised by the defendant-appellant separately.
1. Lack of Good Faith Negotiation with Landowner
An expropriation suit may be dismissed as premature if the condemnor has not first negotiated with and been refused by the landowner. LSA-C.C. Art. 2627, LSA-R.S. 19:2; Texas Gas Transmission Corp. v. Pierce, 192 So.2d 561 (La.App. 3d Cir. 1966); Gulf States Utilities Co. v. Heck, 191 So.2d 761 (La.App. 1st Cir. 1966). The requirement of negotiation is met, however, if the condemnor makes a good faith attempt to acquire a conventional right of way prior to filing an expropriation suit. As noted by the trial judge in his reasons for judgment (Tr. 78), the present record contains sufficient evidence to indicate that the negotiation requirement was satisfied by Cleco’s tender through its right of way agent of several successive offers to purchase the required right of way. As did the trial judge, we regard this as sufficient good faith negotiation to reject the landowner’s contention that the out of court negotiations were inadequate. Texas Gas Transmission Corp. v. Pierce, supra. We do not view the case cited by defendant-appellant (Gulf States Utilities v. Heck, supra) as requiring efforts at conciliation other than those found *681 in the present instance and we therefore deny the landowner’s demand that the plaintiff’s suit be dismissed for lack of good faith negotiation.
2. Location of the Transmission Lines on Subject Property
Counsel for the landowner very forcefully attacks the location of the proposed transmission lines as being unnecessarily destructive of that portion of the subject property best suited for the production of cotton and other high income yielding crops. Under settled jurisprudential authority, however, the selection of a route by the expropriating authority or agency will not be disturbed or upset except upon showing by the party resisting the expropriation that the selection was made through fraud, bad faith or conduct or practices amounting to an abuse of the privilege of expropriation. See Texas Eastern Transmission Corp. v. Bowie Lumber Co., 176 So.2d 735 (La.App. 1st Cir. 1965); Texas Gas Transmission Corp. v. Pierce, supra; Central Louisiana Electric Co. v. Covington, 131 So.2d 369 (La.App. 1st Cir. 1961); Louisiana Power & Light Co. v. Anderson, 188 So.2d 733 (La.App. 2d Cir. 1960). And under these principles we view the expropriating authority’s decision not to parallel an existing canal on the Brooks property (but to proceed angu-larly across the defendant’s cotton field in an effort to maintain as nearly straight a route as possible) as clearly within the discretion granted Cleco and as a matter best relegated to the determination of severance damages. From a reading of the record, including testimony to the effect that the route finally selected was the third of several alternate routes surveyed across the landowner’s property, we cannot conclude that the trial judge committed error in refusing to alter the expropriating authority’s route selection.
3. Necessity of the Taking
There is no dispute as to the propriety of the taking for the purpose of constructing the St. Landry-Rapides Station line. The facts contained in the record clearly bear out the almost emergency need for additional transmission lines serving the Alexandria-Pineville area. Defendant-appellant strongly disputes, however, the necessity of the taking of additional right of way for the future construction of the Toledo Bend-Rapides Station line. Appellant correctly points out that in every expropriation case the burden of proving the public purpose and necessity of the taking rests on the expropriating authority. See Interstate Oil Pipeline Co. v. Friedman, 137 So.2d 700 (La.App. 3d Cir. 1962); United Gas Pipeline Co. v. Nezat, 136 So.2d 76 (La.App. 3d Cir. 1961) [certiorari denied] ; United Gas Pipeline Co. v. Blanchard, 149 So.2d 615 (La.App. 1st Cir. 1963) [certiorari denied]; Louisiana Railway & Navigation Co. v. Xavier Realty, 115 La. 328, 39 So. 1; LSA-C.C. Art. 497. To meet this burden, plaintiff-appellee placed its chief engineer in charge of transmission line construction on the stand and he testified that the hydroelectric plant at Toledo Bend is scheduled to go into operation in 1968 and that the line would likely be built within three years (Tr. 123). He stated that if the second line were not built within three to five years, the rapidly expanding need for electrical power in central Louisiana area could render the situation critical (Tr. 139). He further testified that due to the highly developed and improved area around the Rapides substation, the two transmission lines will parallel each other for some distance away from the Alexandria area in order to minimize the inconvenience and landowner disturbance which two separate 100-foot rights of way converging through a highly developed area and terminating in the Rapides substation would cause. It was explained that the central Louisiana area has one of the fastest growing electrical loads in the state and that the decision to construct the second line was based on a study of future area needs conducted at Texas A. & M. *682 University by Cleco in co-operation with several other area utility companies.
Seizing on the admitted three to five year delay (from date of trial) in construction of the Toledo Bend line, counsel for the defendant-appellant argues most persuasively. that the servitude granted across the landowner’s property should be limited to the 100-foot width necessary for the construction of the St. Landry-Rapides Station line. He contends that because of this delay this court should reverse the trial court’s determination that the additional fifty foot strip of right of way which will accommodate the Toledo Bend line may properly be expropriated in the instant suit.
The question is admittedly vexatious. The possibility of public utility companies and other bodies vested with power of eminent domain expropriating lands for construction to be undertaken five or ten years in the future in order to escape the natural trend of generally rising land values gives us just cause for alarm. On the other hand, there would be neither logic nor sound practice in requiring that an expropriating authority prove under penalty of dismissal of its suit that the taking is prompted by dire emergency and that construction of the facilities thereon will commence immediately. It is only after careful deliberation, therefore, that we conclude that under the special circumstances existing in the present case — the fact that the first line is necessary to satisfy an almost emergency demand which the evidence shows will likely increase in the immediate future; the fact that the two transmission lines are converging through a densely populated and highly improved area go that parallel construction is necessary to escape widespread landowner inconvenience and damage — that the necessity of the taking to accommodate the second transmission line has been established. Thus, we are not prepared to say that in granting the prayed for servitude in the instant suit despite a probable three year delay in construction completion of the utility our brother below committed reversible error. See 29A C.J.S. Eminent Domain § 92, page 386; 26 Am.Jur.2d § 94, page 749, § 116, page 77S.
4. Contentions as to Valuation and Award
It is undisputed that the property expropriated in the instant suit is eminently suited for the production of high yield agricultural crops such as cotton and soybeans. Furthermore, the |750.00 per acre valuation placed on the property by the trial judge is uncontested by either party, being based on the near-unanimous estimates of experts for both plaintiff and defendant. Serious points of contention, however, are the 25% retention value of the 14.6 acre servitude (Cleco urges that it should be increased to 50%) and the award of 15% severance damages to the remaining 99.4 acres (Cleco contends that only 5.7 acres adjacent to the right of way were damaged to the extent of 50% of fee value).
Under settled- principles of expropriation law, we have no difficulty in at least affirming the trial court’s compensation and severance awards based upon preponderating expert testimony as justifiably evaluated by it. See Texas Gas Transmission Corp. v. Pierce, supra; Central Louisiana Electric Co., Inc. v. Gamburg, 200 So.2d 733 (La.App. 3d Cir. 1967, No. 2023); Gulf States Utilities Co. v. Cormier, 182 So.2d 176 (La.App. 3d Cir. 1966); Central Louisiana Electric Company v. Fontenot, 159 So.2d 738 (La.App. 3d Cir. 1964).
However, the same special circumstances which dictated our affirmance of the location and necessity decisions (2 and 3 above) also compel a more searching examination of the compensation and severance awards. The two expert appraisers who testified on behalf of the defendant landowner were of the opinion that the retention value of the area embraced within the servitude was only 20% (as opposed to the trial judge’s finding of *683 25%). These same experts, both eminently qualified in the handling and sale of agricultural properties, testified further that the remaining 99.4 acres would suffer i severance damages to the extent of 25% of its value. In addition to these two experts, however, the landowner called as witnesses on his behalf numerous persons experienced in modern mechanized farming of high yield agricultural crops. Each of these witnesses (save one called by the plaintiff) testified that in their opinion the destruction of a good portion of the landowner’s best cotton acreage and the physical obstruction of the poles and guy wires to the use of modern four-row high capacity farm equipment rendered the property in question inefficient as a farming unit and therefore unprofitable to operate. In the opinion of these witnesses, the value of this land, admittedly best suited for the production of agricultural crops, was diminished by an account far greater than 25% of the remaining parcel’s value. We must further consider that because the two high voltage transmission lines are to be placed side-by-side across the landowner’s property, the hazards of aerial spraying and the difficulties of weed and insect control are now doubled. See Central Louisiana Electric Co. v. Gamburg, supra. Also multiplied is the inconvenience to the landowner, who must suffer on two occasions (now and approximately three years from now) the burden of having heavy equipment of various descriptions parade across his land in the exercise of condemnor’s legal rights under this judgment of expropriation. Whatever esthetic detractions which may be attributed to the single transmission line are now doubled, as is the ever present (though slight) danger to human life from numerous and uninsulated high voltage wires strung some thirty feet above the ground. Taking all these factors into consideration, therefore, it is our opinion that the cases relied on by the trial judge in determining the awards to be granted the landowner in this expropriation suit are inapplicable to the present suit because of the multiple transmission lines herein. Based on a careful evaluation of the testimony in this record, both lay and expert, and the factors just enumerated, we have no hesitancy in increasing the award for the fee value of the servitude from seventy-five to eighty percent and in increasing the severance damages to the remainder of the property from fifteen to twenty-five percent.
For the foregoing reasons, therefore, the judgment of the district court is hereby amended to increase the award for the value of the servitude from $8,212.50 to Eight Thousand Seven Hundred Sixty and no/100 Dollars ($8,760.00), and to increase the award for severance damages from $11,182.50 to Eighteen Thousand Six Hundred Thirty-seven and 50/100 Dollars ($18,637.50). With these modifications, the judgment of the district court is affirmed in all other respects, the plaintiff-appellee to bear the costs of all proceedings.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.