LAKE CHARLES HARBOR & TERMINAL DISTRICT, Plaintiff,

v.

Mrs. Josephine Haltom HENNING et al.

Mrs. Josephine Haltom HENNING et al., Appellants,

v.

LAKE CHARLES HARBOR & TERMINAL DISTRICT, Appellee.

No. 26406.

United States Court of Appeals
Fifth Circuit.

April 3, 1969.

James J. Cox, Lake Charles, La., for appellant.

Everett R. Scott, Jr., James R. St. Dizier, Robert M. McHale, Lake Charles, La., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

GODBOLD, Circuit Judge.

This is an appeal from a ruling that a condemnation and expropriation of appellants' land by the Lake Charles Harbor and Terminal District was a taking for public purpose and did not violate the Fourteenth Amendment to the United States Constitution. This is the second occasion we have had to review the district court's findings with regard to this exercise of the power of eminent domain by the harbor district.[1] On the first appeal we remanded to the district court for "specific findings of fact and conclusions of law as to what use the land is to be put to and whether that use is public". 387 F.2d at 266. We now examine the findings made on remand.

Appellants contend the district court again failed to make specific findings concerning the use to which the land is to be put and that the evidence at best shows the district proposes only some undetermined future use of the land. Appellants further argue that even if the district does have a definite plan for the tract, the project will benefit only one manufacturer in the area. This, the Hennings assert, would be a seizure of private property for a nonpublic use and would violate the constitutional prohibition against the taking of property without due process of law.

Appellants, and appellee by cross appeal, also question the method of valuation of the expropriated land. Each contends that the trial court merely averaged several appraisals in establishing the value of the property and that such a procedure is contrary to Louisiana law.

The district judge made the following findings of fact and conclusions of law concerning intended use:

> The use which the Dock Board plans to make of this property is to construct a bulk handling facility which is capable of handling varied products in the bulk state * * *. More specifically, the purpose of the taking herein is to provide a situs upon which to locate vehicular roads, railroad tracks, and such buildings, machinery and other apparatii as are necessary to accommodate the handling in a bulk state (as contrasted to containerized, packaged, baled or sacked) of certain commodities that flow through the Port for loading aboard and unloading from oceangoing vessels and other marine transportation, in connection with the harbor and terminal district's business.

These are specific fact findings and conform to the mandate of this court. The issue thus is narrowly drawn: are these findings adequately supported by the evidence and do they provide a basis for holding that the land is being expropriated for a public purpose?

The board governing the harbor district derives its power to expropriate for public purposes from Louisiana Revised Statutes 34:203; 34:206, which permit the board to acquire[2] any land necessary for the business of the district. This board may own and operate any facilities constructed on such lands or may lease them to others so long as the purpose is to improve the operations of

---

1. See Henning v. Lake Charles Harbor and Terminal District, 387 F.2d 264 (5th Cir. 1968), reversing and remanding Lake Charles Harbor and Terminal District v. Henning, 260 F.Supp. 756 (W.D.La. 1966).

2. The board has power to acquire by purchase, donation, expropriation, lease or otherwise. L.R.S. 34:206.

the port. See Wright v. Lake Charles Harbor and Terminal District, 188 So.2d 449 (La.App.1966), writ ref. 249 La. 620, 188 So.2d 922. The expropriation of land for construction of a bulk handling facility is a taking for a public use and not open to constitutional attack. Lake Charles Harbor and Terminal District v. Farquahar, 196 So.2d 847 (La.App.1967).[3]

■ Appellants complain that the district has abandoned its original plans for a coke storage facility to be constructed on this tract and that at the present time the district proposes only a railroad, vehicular roads and utility substation to be located thereon. These facilities would require a taking of only about four acres of appellants' 26.62 acres. However, the evidence shows the board's intention to locate on appellants' land a portion of a proposed bulk handling complex devoted to the storage of liquids in bulk form.[4] Port Engineer Jessen testified that no one had been authorized to draw up the plans for a liquid storage facility, but we cannot infer from this that the board is capriciously taking the Henning land without an intended future use. Indeed, Jessen later clarified his statement when he testified that while he had not received instructions to draw up plans to be put out for bids, preliminary sketches for cost estimates and the like had been drawn. We conclude that the evidence more than adequately supports the trial judge's findings of fact concerning the proposed usage of appellants' property.

■ Appellants contend that even if a liquid storage facility is contemplated, it will be constructed for the primary benefit of one user, Hercules Powder Company, and that this will cause the taking to be for a nonpublic use and, therefore, unconstitutional. This misapprehends both the evidence and the law. The evidence shows that while Hercules is the only known prospective user of the facility, the board intends to actively seek others. Jessen testified that a proposed lead into the storage tank from Hercules was not intended to be an exclusive one and that more leads could be constructed when more users were attracted. It is also clear from Jessen's testimony that the equipment in the proposed facility will be "owned and occupied and owned and operated by the Port employees". There is no substantial evidence supporting appellants' implications that someone other than the harbor district board will own and operate the liquid storage area. Moreover, proof that Hercules would be the only user would not necessarily convert the proposed storage area into a private boon for that company. Cf. United States v. Marin, 136 F.2d 388 (9th Cir. 1943).[5]

3. This case involved another tract of land taken by the harbor district board in connection with the same port facility expansion from which the instant dispute arose. The Wright case, supra, upheld the constitutionality of a bond issue in furtherance of these plans to relocate and expand the port facilities.

4. Mr. Jessen, the port engineer, testified succinctly as to the board's intentions:
    I say that in my judgment the Port needs that for the proper development of a bulk handling facility; I say the present plans are for a liquid-storage facility on that tract [Hennings'] of land.
    Mr. Neely, the port director, also testified, "It was always in the plan to put the storage in there."
    There can be no suggestion that the district must specify exactly what kinds
of liquids will be stored in the tanks to be constructed. Obviously, that information cannot be supplied until it is known who the users will be.
    Appellants make much of the testimony of Board President Field; but in his testimony, fairly evaluated, he does not repudiate the idea of a large liquid storage facility for the Henning land but merely expresses his nonfamiliarity with the proposed volume of such a facility.

5. The condemnation in Marin took place in the context of a wartime seizure of property but the principle therein announced has broader validity. As the court stated in Marin:
    We may assume that the expansion of its plant and facilities will be of advantage to the American Forge Company, but that result is purely incidental. The condemnation of the land

The record clearly shows that a place for bulk storage of liquids is an essential constituent in the board's overall plan for development of improved loading and docking operations at the Lake Charles Harbor. In such circumstances the fact that for some period only one user might take advantage of the facility would not defeat the project. "It is not essential that the entire community, or even any considerable portion thereof, should directly enjoy or participate in an improvement in order to constitute a public use." Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 161, 17 S.Ct. 56, 64, 41 L.Ed. 369, 389 (1886). The legally decisive factor is that any potential user similarly situated to Hercules will have the same opportunity as Hercules to use the storage area. Fallbrook Irrigation District v. Bradley, supra. See also Swan Lake Hunting Club v. United States, 381 F.2d 238, 242 (5th Cir. 1967).

Appellants' most cogent objection concerns evidence that proposed use of the Henning land will not take place in the immediate future. No final plans have been drawn, not more than one prospective user has appeared, and generally little has been done in the way of preparation for construction of the contemplated storage tank. Of course, the board points to the pendency of the instant lawsuit as the real barrier to progress. Nevertheless, the question of expropriation of property for construction not to be undertaken immediately is a "vexatious" one which must be examined closely. Central Louisiana Electric Co. v. Brooks, 201 So.2d 679 (La.App.1967).

The evidence indicates that if the district prevails in this lawsuit it intends to integrate the Henning tract into the overall plan for improvement of the harbor. It is also undisputed that a liquid bulk storage facility is needed at the port and is an important part of the proposed development. Thus, the situation is similar to that in two significant Louisiana cases where the question of expropriation for a known, but not immediate, future use was before the court. Central Louisiana Electric Co. v. Brooks, supra; City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675 (1930).

In *Brooks*, a servitude across private property was granted for construction of a power line needed at the time of suit. The electric company, however, also sought right-of-way for construction of a parallel power line which was not needed immediately but which the evidence showed would be needed soon because of the growing demand for electrical power in Central Louisiana. The court concluded that allowing this additional condemnation was proper because of the demonstrated certain future need and the desirability of routing transmission lines along a parallel course when they are located in a densely populated and highly improved area. In the case at bar there is a demonstrated future need, and it is shown to be desirable, if not mandatory, that storage for liquids in a bulk state be in close proximity to the docks and other storage areas.

In *Moeglich*, the City of New Orleans proposed to take ownership of a small strip of land for the extension of a street in order to relieve traffic congestion and to facilitate emergency fire, police and ambulance service in a portion of the city. The evidence indicated that the city was rapidly growing and that extension of the street was certain to be necessary in the future, if not at the time of the lawsuit. The Louisiana Supreme Court held that the expropriation was proper.

Nor was it necessary, in view of the existing conditions for the city, to show actual, immediate, and impending necessity for the expropriation. It is sufficient, in carrying out the general plan of improvements contemplated in the

for the expansion of the private plant is an appropriate means of effecting a public end, namely, the making possible of a speedy and successful prosecution of the war * * *. 136 F.2d at 389.

near future, to show that the defendant's land will be needed * * *. 126 So. at 677.

Federal authorities also recognize that "the power of eminent domain is not confined to the taking of property for which there is an absolute and immediate need". Chapman v. Public Utility District No. 1 of Douglas County, Washington, 367 F.2d 163, 168 (9th Cir. 1966). In *Chapman*, land was seized as necessary to construction of a dam because of the possibility that much of the land might be continually inundated with flood waters. The public utility district could not say with assurance exactly when the land would be needed. But the district did demonstrate, as did the harbor district in the case *sub judice*, that a need probably would exist within a reasonable time.

■ In light of the record and the foregoing Louisiana and federal authorities, we hold that the board has demonstrated that within a reasonable time it will construct a liquid storage tank as an integral part of its plan for improving the Lake Charles port area. See also Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1955); Wilson v. United States, 350 F.2d 901, 906–907 (10th Cir. 1965).

■ Turning from the propriety of the expropriation of appellants' property, we examine their alternative contention that the board is taking property in excess of the public need. This complaint might have had some validity if the board did not intend to construct a liquid storage facility on appellants' property. Once need has been demonstrated, the determination by the body exercising eminent domain of the extent of property to be taken, the location of the facility, and the suitability of the site, are matters within its sound discretion, and the determination of such factors will not be disturbed if it has acted in good faith impartiality. Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901, 902 (1953); City of Westwego v. Marrero Land and Imp. Ass'n, 221 La. 564, 59 So.2d 885, 886 (1952). Cf. Berman v. Parker, 348 U.S. 26, 34–36, 75 S.Ct. 98, 99 L.Ed. 27, 38–39 (1954).

Both sides object to the valuation of the Henning property. The compensation due the landowners was computed by an averaging of four appraisals after the court had adjusted one of the appraisals downward.[6] The court specifically found that each of the appraisers was a highly qualified member of the American Institute of Real Estate Appraisers.

■ Initially, we point out that averaging is not strictly forbidden under Louisiana law, despite the dictum in State, Department of Highways v. Munson,[7] 174 So.2d 923, 924 (La.App.1965). Instead, the general rule on fixing com-

---

6. One appraiser for the board valued the land at $3,500 per acre, the other at $3,700 per acre. One appraiser for the landowners valued the land at $8,250 per acre, the other at $9,500 per acre. The trial judge gave full value to all estimates, except the one of $9,500 per acre which the court felt had been adjusted too high to the particular comparables. The court credited the $9,500 appraisal only to the extent of $8,430 per acre. Fair compensation was then found to be $5,970 per acre resulting from the averaging of the four figures as follows:

$$\begin{array}{r} \$3,500 \\ 3,700 \\ 8,250 \\ 8,430 \\ \hline \$23,880 \end{array}$$

$$\begin{array}{r} 5,970 \\ 4)\ \overline{23,880} \end{array}$$

7. The majority in *Munson* remarked that:
   The averaging of opinions, though very convenient and probably sound in a case where there is very little difference between the opinions of the various experts, cannot be resorted to to reconcile greatly divergent estimates.
   However, in that case, the state's appraisers did not agree, and the state had called as witnesses only the appraisers whose testimony would be favorable. In addition, these appraisers had neglected to assign any value to part of the land comprising a railroad servitude. Thus, averaging was used as a means of voiding the court's responsibility to analyze the conflicting estimates.

pensation in condemnation cases is stated in Florida Gas Transmission Co. v. Munson, 198 So.2d 750, 753 (La.App.1967).

> It is also well established that as to expert witnesses the testimony of each will be accorded equal weight when such testimony appears to be grounded on well established facts and is supported by sound reasoning and good judgment.

Strict application of this formula will produce what substantially amounts to averaging when differences in judgment alone divide the opinions of experts. That is what occurred in the court below. Each appraiser employed the generally accepted principle of analyzing a comparable sale of contiguous property. The Reily-Hercules Terminal Site lease was uniformly considered by all the appraisers. Although their computations began with initial valuations ranging only from $4,200 to $4,400 per acre, and each essentially made adjustments for the same factors of time and scarcity, resulting estimates varied from $3,500 to $9,500 per acre after application of individual judgment determinations.

The upshot of the Louisiana cases is that weight and consideration must be given to all expert witnesses whose valuations are founded on sound reasoning and judgment. See Greater Baton Rouge Consol. Sewer Dist. v. Nelson, 144 So.2d 186, 194 (La.App.1962). We feel that the trial judge followed this procedure in the instant case.[8] Quite properly, the court noted that a jury would have been entitled to award any amount of compensation between the two extreme figures. We cannot say that $5,970 per acre is an erroneous determination of the compensation that should be paid the landowners. We affirm the trial court's findings on valuation.

One final issue remains. The board urges that the district court erred in awarding to appellants the sum of $5,400 for expert witness fees. We think that the trial court correctly applied the substantive law of Louisiana in awarding this sum to the landowners denominated either as costs or as part of just compensation. L.R.S. 13:3666; State, Through Dept. of Highways v. Barineau, 225 La. 341, 72 So.2d 869 (La.1954); State, Through Dept. of Highways v. Jones, 243 La. 719, 146 So.2d 414 (La.1962); State, Department of Highways v. Salemi, 249 La. 1078, 193 So.2d 252 (1966). We adequately treated this point on the first appeal of this case. Lake Charles Harbor and Terminal District v. Henning, supra, at 759. We adhere to the views expressed therein, and we affirm again the trial court's award of $5,400 for expert witness fees.

The judgment of the trial court is Affirmed.

---

8. Moreover, United States v. 4,925 Acres of Land in Grant Parish, La., 143 F.2d 127 (5th Cir. 1944), cited by appellee on the question of averaging, is inapplicable. In that condemnation case the court instructed the jury, which had been unable to agree on a verdict, that each juror should write his valuation on a piece of paper and the total of the twelve jurors' valuation then should be divided by twelve to arrive at a verdict.