196 So.2d 63 (1967)
STATE of Louisiana, THROUGH the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Raymond P. MARTIN, Defendant-Appellee.
No. 1922.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1967.
Rehearing Denied March 21, 1967.
Writ Refused May 19, 1967.
*64 Glenn S. Darsey, Chester E. Martin, D. Ross Banister, Ben C. Norgress, Johnie E. Branch, Jr., by Glenn S. Darsey, Baton Rouge, for plaintiff-appellant.
Robert Brinkman, Opelousas, for defendant-appellee.
Before TATE, FRUGÉ and HOOD, JJ.
HOOD, Judge.
This suit was filed by the Louisiana Department of Highways under the provisions of LSA-R.S. 48:441 et seq., to expropriate a a permanent servitude of drainage affecting a small tract of land owned by defendant, Raymond P. Martin. Judgment was rendered by the trial court awarding the defendant substantially more than the amount which the Department had deposited in the registry of the court, and plaintiff has appealed.
The issues presented on this appeal relate to: (1) The market value of the servitude taken and the proper legal basis on which such market value should be determined; and (2) the value of the severance damages, if any, sustained by the remainder of the property and the proper appraisal basis on which such severance damages should be calculated.
The entire tract of land owned by the defendant, and from which the subject property was expropriated, contained 27.7 acres. It was unimproved land located a few hundred feet southeast of the city limits of Opelousas, in St. Landry Parish. It is bounded on the north by a gravel road and on the west by a public road known as Creswell Lane.
On February 8, 1960, defendant Martin voluntarily sold to the Department of Highways a 2.263 acre strip of land along the east side of his property, which strip was to be used by the Department in constructing a blacktopped service road. After this strip of land had been sold to plaintiff, the latter moved a fence which theretofore ran along the east boundary of defendant's land, and it reconstructed this fence along the west boundary of the right of way for this new service road. The Department began constructing the new road on this right of way shortly after it acquired this strip of land from defendant.
On January 18, 1961, or about eleven months after the above mentioned conventional deed was executed by Martin, the Department filed this expropriation suit to obtain a permanent servitude of drainage affecting a small portion of defendant's remaining land, the area affected by the servitude *65 being located adjacent to and immediately west of the service road right of way. The property affected by this drainage servitude is trapezoidal in shape and contains .043 of an acre, having a frontage on the service road right of way of 100 feet, by a depth of 20 feet along the north line and 32 feet on the south line, and a rear or west line 75 feet long. It contains approximately 1750 square feet.
The new service road running along the east line of defendant's property was under construction when the order of expropriation was signed on January 18, 1961. All parties agree that the construction of this service road along that line greatly enhanced the value of Martin's property.
At the time of the filing of the original petition and the signing of the order of expropriation in this suit, the Department deposited the sum of $145.00 in the registry of the court as the value of the servitude taken. An answer was filed by the defendant claiming $61,500.00 for the property and severance damages. Thereafter plaintiff filed an amended petition increasing the amount of the deposit to $1003.00, and then it filed a second amended petition alleging the amount of just compensation to be $60.00, and praying that all amounts which had been deposited in excess thereof be refunded to the Department.
After trial on the merits judgment was rendered by the trial court on March 31, 1966, awarding defendant the sum of $350.00 as the market value of the property taken and $3029.00 as severance damages to the remainder of the property. On this appeal, the Department contends that the award for the value of the property should be reduced, and that there should be no award for severance damages.
Two expert appraisers testified in behalf of defendant and one testified for the plaintiff. The two appraisers called by defendant took into consideration the benefits which accrued to defendant's property from the location and construction of the new service road. They stated that the fact that such a road was under construction on January 18, 1961, the date on which this suit was filed, greatly enhanced the value of defendant's property as of that date. They felt that the benefits or enhancement in value had already accrued to defendant by the time this suit was filed, and that he was entitled to recover for the property taken an amount which would be in keeping with the enhanced value, even though the enhancement in value was due solely to the construction of this new service road.
Both of defendant's appraisers, after taking into consideration the fact that a new service road was being constructed, determined that the highest and best use of defendant's property was for residential purposes. Both felt that the highest value could be realized by dividing the property into residential lots fronting on the new service road, with each such lot having a depth of 200 feet. Using the market data approach, and considering prior sales made in a developed subdivision located immediately west of and adjoining the property, one of defendant's appraisers arrived at a value of $40.00 per front foot for these ideal lots and the other found that they had a value of $45.00 per front foot. Converting that into the value per square foot, one expert valued the servitude taken at $350.00 and the other at $390.00.
Both of defendant's appraisers also felt that the partial taking resulted in a considerable amount of severance damages due to the loss of 100 feet of marketable frontage along the service road. One of them estimated the value of a "typical lot," with a frontage of 100 feet on the new road by a depth of 200 feet, at $4000.00 before the taking of the servitude of drain. Since the construction of the drain facility would cut off access from the new road to the lot directly affected by that facility, the appraiser concluded that the remainder of the lot would have a value of only $621.00 after the taking. He deducted that residual value and the $350.00 which was his estimate of the value of the servitude from the original *66 value of the lot, leaving a net loss of $3029.00, which he felt was the severance damage suffered by defendant. No severance damage was allowed for any of the remainder of the property by that appraiser. The same method of computing severance damages was used by the other appraiser called by defendant, but his original valuation of the lot was somewhat higher than the first one and for that reason his estimate of severance damages also was higher. The trial judge accepted the lower of the two estimates.
The appraiser called by plaintiff determined the value of the property taken as of the date the order of expropriation was signed, January 18, 1961, but "without the influence of the highway." He felt that the defendant landowner was not entitled to be paid the enhanced value of the property, because the enhancement in value was due solely to the construction of the highway and the drainage servitude was a part and parcel of the same highway project. He concluded that if the highway had not been constructed on defendant's property, the highest and best use of that property as of the date of the taking would have been for "country subdivision." By using the market data approach, and considering sales which he considered to be comparable, he concluded that after excluding the enhancement in value brought about by the highway the servitude taken had a value of only $60.00 as of the date of the taking. He testified that the valuation was made as of January 18, 1961, but that "The valuation was based on no road frontage and no new highway."
Plaintiff's appraiser also felt that the defendant sustained no severance damages as a result of the taking of this drainage servitude. He reasoned that severance damages also must be determined on the basis that there was "no road frontage or no new highway," and he concluded that the taking of this servitude would not have caused any damages to defendant's remaining property if the effect of the new highway on that property is to be disregarded.
The trial judge concluded that the enhancement in value of defendant's property by virtue of the location of the new service road should be attributed to the property required for the servitude of drain, and that the market value and severance damages should be determined accordingly. He stated that "the highway had been established" and "the land had acquired its enhanced value" at the time this expropriation suit was filed. The only evidence as to value and severance damages calculated on that basis was presented by defendant, and the court based its awards on that evidence.
Plaintiff contends that the trial court erred in basing the awards on the enhanced value of the property. It argues that the servitude of drain, designed and intended to drain the highway, was part and parcel of the highway project, and that it cannot be segregated from the building of the actual highway for the purpose of according an enhancement in value to the servitude of drain resulting from the construction of that highway. It correctly points out that there would be no necessity for the servitude of drain were it not for the highway project, and that the property affected by the drainage servitude adjoins the right of way of the highway which was being constructed.
LSA-R.S. 48:453 provides that, "The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court." The law relating to general expropriation suits provides, "In estimating the value of the property to be expropriated, the basis of assessment shall be the value which the property possessed before the contemplated improvement was proposed, without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work." LSA-R.S. 19:9; LSA-C.C. art. 2633.
Plaintiff argues that the provision of the general expropriation statute to the effect *67 that just compensation for the property expropriated is "the value which the property possessed before the contemplated improvement was proposed," means the value of the property before the entire road project was proposed. The defendant contends that it means simply that the compensation must be fixed at the value of the property before the drainage facility was proposed. This issue apparently is res nova in this state.
We think the rule which was applied in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55 (1943) is applicable here. In that case the court said:
If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.
The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities.
The general rule is stated in 27 Am.Jur. 2d, Eminent Domain, Sec. 284, p. 82, as follows:
Where a previously established project is to be extended or enlarged by condemnation of adjacent lands, the question whether the owner of the adjacent lands may recover as a part of his compensation the enhancement in the value of the land since the establishment of the original project is frequently made to depend upon the question whether, at the time of the construction of the original project, it was contemplated that the land in question would sooner or later be taken for the purposes of the project, or whether the taking of it was conceived, not as part of the original project, but as an independent enterprise subsequently undertaken in connection with the original project. In the former event, in analogy to the general rule that enhancement after a practical certainty that the project will include the land in question is not a part of the market value of the land for which the owner is entitled to compensation, the courts have usually ruled that the owner of the land taken for the purpose of extending or enlarging the original project is not entitled to the enhancement in the value of the land due to the project. But where the taking of the land was not conceived as a part of the original project but as an independent enterprise subsequently undertaken in connection with the original project, in analogy to the view that enhancement prior to the determination of the location of a public improvement and the inclusion therein of the land in question is a part of the market value of the land for which the owner is entitled to compensation, the owner of land taken for the purpose of extending or enlarging the original project is entitled to the enhancement in the value of the land due to the improvement.
*68 Substantially the same rule is recognized in Vol. I, Orgel on Valuation under Eminent Domain, Sec. 104, pp. 443-446; 29A C.J.S. Eminent Domain § 136(9), pp. 565-567; Louisiana Highway Commission v. Merchant, 174 So. 696 (La.App. 2d Cir. 1937); State v. Landry, 219 La. 721, 53 So. 2d 908 (1951); State Through Dept. of Highways v. Johnson, 141 So.2d 54 (La. App. 2d Cir. 1962, cert. denied); United States v. 172.80 Acres of Land, etc., 350 F. 2d 957 (C.A. 3d Cir. 1965); and United States v. 35.00 Acres of Land, 214 F.Supp. 792 (W.D.Mo.1962).
The facts presented in United States v. 172.80 Acres of Land, etc., supra, are similar in many respects to those presented here. In that case the United States acquired necessary lands and began the construction of a dam, including some small recreational areas and public facilities in the immediate vicinity of the dam. The appellee-landowners voluntarily sold 20 acres of their 100-acre tract to the government for that purpose, the government agent assuring them that that was the only part of their land which would be needed. The construction of the dam materially increased the value of the landowner's remaining property. Shortly thereafter, the government enlarged the project and then instituted expropriation proceedings to condemn the balance of the land owned by appellees. The court, after citing the Miller case, supra, held that the appellees were entitled to the enhanced value of their property because "there was not such probability of future inclusion of the Totten (appellees) land in the then new public project as to require disallowance of enhanced value under the Miller doctrine."
In the instant suit the servitude of drain must be considered as either a part of the original undertaking or as a later enlargement, extension or revision of it. If the construction of this drainage facility was included in the public project from the beginning or if the lands affected by this servitude were probably within the scope of the project from the time the State was committed to it, then under the above stated rule the enhancement in value of defendant's property cannot be allowed. On the other hand, if the construction of this drainage facility was not included in the project from the beginning, or was not probably within the scope of the project but was simply a subsequent enlargement of it, then the landowner would be entitled to receive the enhancement in value resulting from the location of the project on or near his property.
The evidence in this case convinces us that the acquiring of this additional tract of land from defendants for a servitude of drainage was not included in the scope of the project from the beginning, but that it was a subsequent addition thereto allegedly necessitated because of erosion or because of an engineering miscalculation. The defendant had no way of knowing, and cannot be held to have reasonably contemplated, that the additional property would be needed for a drainage servitude. A fence had been reconstructed along the west line of the original right of way, indicating that no additional property would be required for the project. If defendant should not be allowed to recover the enhanced value of the land taken for this servitude, then there would appear to be no limit as to the right of the state to expropriate additional property at later dates for other improvements related to the service road, without being compelled to pay the enhanced value of the property.
Almost a year before this suit was filed, the defendant amicably sold to plaintiff a strip of land for the construction of this service road. In doing so, it is reasonable to assume that he took into consideration the enhancement in value which would accrue to his property because of the construction of this new road, and he undoubtedly agreed on the terms of the sale with that in mind. He had no reason to anticipate at that time that another portion of his land would be taken at a later date. If plaintiff is now permitted to expropriate additional lands of the defendant for less than the enhanced *69 value, then an injustice will be done to defendant by depriving him of an enhancement which has accrued and which he had a right to assume would inure to his benefit when he conveyed a right of way to the Department originally.
We conclude that since the taking of this servitude was not within the scope or probable contemplation of the project from the beginning, but instead was added after a right of way had been acquired from defendant and construction of the road had begun, the defendant is entitled to be compensated for the servitude taken at the enhanced value of the property. For the same reasons, we think the trial judge correctly considered the enhancement in value and the fact that a service road was being constructed in fixing the amount of severance damages due the defendant.
Plaintiff argues further that the trial judge erred in permitting defendant's experts to predicate their estimate of severance damages on the highest and best use of one "typical lot," measuring 100 feet by a depth of 200 feet. It is argued that the true measure of severance damages is not the diminution in value of one hypothetical lot, but instead it is the diminution in value of the remainder of defendant's entire 27.7 acre tract resulting from this expropriation.
Our jurisprudence is settled that the severance damage allowable as a result of an expropriation is the difference between the market value of the landowner's remaining property immediately before and its diminished value immediately after the taking. State, Department of Highways, v. Dodge, 168 So.2d 430 (La.App. 3d Cir. 1964). In the instant suit we think a proper application of this rule would be to compute the value of all of the defendant's remaining property immediately before the taking of the drainage servitude and the diminished value of all of such property immediately after the taking. For reasons which we have already pointed out, we have concluded that the remaining property had acquired an enhanced value before the servitude of drain was expropriated. In fixing the amount of severance damages which were sustained by defendant, we think the trial judge properly considered the difference in the value of the property immediately before the taking, as enhanced by the road then under construction, and its diminished value after the taking.
It is true that defendant's appraisers based their estimates of severance damages on the diminution in value of only one "typical lot," instead of on the remainder of the 27.7 acre tract. We interpret their testimony to be, however, that the only severance damages sustained to the entire tract were those which related to this typical lot. The result obviously would be the same if the appraisers would be required to express an opinion as to the diminution in value of the entire 27.7 acre tract. We thus cannot say that the trial judge erred in accepting the testimony of those appraisers as to the amount of severance damages which were sustained by defendant to the remainder of his property.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.