TUCKER, Judge
(dissents):
I disagree with the majority opinion in its valuation of the 2.926 acre tract expropriated and its assignment of an inordinate amount of severance damages to the remaining tract of 7.738 acres. Allowed to stand this decision would reflect that the popular practice of pillaging the public fisc continues unabated in expropriation proceedings. Lest the preceding statement be misconstrued, I do not question the fact that there are many cases in the jurisprudence which support the result reached by the majority.
Where, as stated in substance by my brothers of the majority, there is a cleavage between the experts on the value figures to be placed on the property taken and damages, if any, experienced by the remainder, the trier of fact is in a better position to weigh the credibility of those experts espousing opposing views.
However, the credibility and “sincerity” of the expert testimony is not the prime problem at stake here. I believe that the effect of the majority decision is to cast aside and give no weight whatsoever to the expert opinions of Messrs. Breeding and Deano, which appear to be more soundly and reasonably based than are those advanced by the defendant’s experts.
The mere notion that control of access and the improvement of the roadway along U.S. 190 in front of landowner’s property has brought about a reduction in value of the defendant’s remainder from 50^ to 15^ per square foot challenges credulity, and I *910 do not believe the record is supportive of any such degree of damages. The majority reasons that this substantial reduction in the remainder value is caused solely by the fencing of U.S. 190 with the subject remainder fronting on a service road, and which now requires the defendant to proceed southerly J^ths of a mile along the service road to the Fairway Interchange before he can gain access to the highway. While I cannot subscribe fully and completely to Mr. Breeding’s testimony that a public improvement of the instant nature invariably enhances the value of a remaining piece of property, irrespective of whether or not the remainder is behind a fence, his opinion is well supported in many takings of this nature.
The majority discusses at some length the exceptions to the general rule that the value of property expropriated should be fixed on the basis of its value at the time of the taking but not as enhanced by the purpose of the taking as recited in State, Through Department of Highways v. Trippeer Realty Corporation, 276 So.2d 315 (La.App.1973). In 1965 it was initially determined that a diamond-shaped interchange would be constructed at the intersection of 1-12 and U.S. 190. Had this been done the state would not have required any portion of defendant’s property, and he would have fronted directly on U.S. 190 with no impingement of access thereto some 1600 feet (or more than five city blocks) south of the control of access. In May of 1968, according to Mr. Heroy, it was determined that the interchange at the intersection of 1-12 and U.S. 190 should be converted into a modified cloverleaf design, and in November, 1968 it was decided that U.S. 190 south of 1-12 should be a controlled access highway to the Mande-ville Causeway. In some manner the majority reasons that the landowner developed some vested interest in the plaintiff continuing with its original idea of a diamond interchange; that the initial concept of a diamond-shaped interchange, which never came to fruition, enhanced the value of the landowner’s property, and under the authority of the holdings in State, Through the Department of Highways v. Martin, 196 So.2d 63 (La.App. 3d Cir. 1967) and State, Through Department of Highways v. Boles, 240 So.2d 786 (La.App. 2d Cir. (1970) the defendant landowner was entitled to claim the enhancement due to its proximity to the improvement as originally envisioned. The cited cases reputedly containing exceptions to the general rule are not in accord with the circumstances here. In the instant case the evidence shows that there was never any construction of a diamond-shaped interchange, and the only real activity in this arena was the eventual commencement in the erection Of a modified cloverleaf design.
The extension of the above discussion probably had little bearing on the majority decision, and I mention it here fór the sole purpose of indicating that the defense expert Patecek allotted 5‡ per square foot to his overall value of 50‡ per square foot for the property taken. On this account defendant’s other appraiser Lejeune, assigned no separate value to the property as it would have been situated had the diamond design prevailed, and this witness said it was impossible to do so. Nonetheless, Le-jeune arrived at the same per square foot value of 50^ as did Patecek.
As stated by the majority the trial court awarded $63,728.00 for the part taken, and fixed the severance damages to the remainder at $38,364.00. This reflects that Patecek’s figures were used primarily with respect to remainder damages as he variously estimated the value of the improvements left on the remainder at $34,000.00 or $35,000.00 whereas, Lejeune put an after value on these improvements in the sum of $40,000.00. If this latter figure had been used the severance damages would have been reduced by $5,000.00.
It is my considered opinion that both the value of the land taken and the amount awarded for severance damages have been overstated by the majority, and therefore I respectfully dissent.