FRED W. JONES, Judge.
In December, 1974 the State of Louisiana through the Department of Highways (“State”) filed three suits under La. R.S. 48:441 et seq. (“quick taking” statute) to expropriate certain property belonging to the defendants, either individually or jointly, for the purpose of widening Louisiana Highway 4 in Franklin Parish from a two-lane to a four-lane thoroughfare. In October, 1975 the State filed another three suits against the same defendants to expropriate additional property lying adjacent to that first taken in order to relocate utilities. These six suits were consolidated for the purpose of trial, which was had in 1978.
From a judgment in each of the suits in favor of the landowners, the State appealed. However, on appeal the State has conceded the correctness of the judgments in No. 14,309, No. 14,311, No. 14,312 and No. 14,313. Consequently, this appeal is concerned only with the lower court’s judgments in No. 14,310 and No. 14,314. The state argues that the awards to the defendants in those actions were excessive because the trial judge erred in:
(1) Employing erroneous square footages as to remainder areas for computation of severance damages.
(2) Failing to offset severance damages with amount of special benefits accruing to remainders after taking.
(3) Fixing value of land expropriated in second taking without deducting for diminution of value occasioned by first taking.
The trial court judgments contested in this appeal involve the property described on the pertinent state map as parcel 3-1 (for sake of clarity see sketch appended to this opinion). The original tracts from which this parcel was expropriated contained some 105 acres, with the parts taken comprising about 3 acres. Parcel 3-1 is described generally as beginning at the eastern corporate limits of Winnsboro, Louisiana and running east along the north side of La. Hwy. 4 for a distance of approximately 3000 feet, with varying depths.
Although each side presented the testimony of two expert witnesses, the trial judge apparently found most persuasive the testimony of Darrel V. Willet, one of defendants’ expert appraisers. For appraisal purposes this witness divided parcel 3-1 into three segments (as shown on the appended sketch). For segments 1 and 2, with which this appeal is concerned, Willet adopted a “front-use” approach to his land analysis, assuming a depth of 200 feet for the property fronting on the highway.
It was generally agreed that the highest and best use of the expropriated property was for commercial development and rural homesites.
After considering the testimony reláting to land values, and without wholly accepting any one set of appraisals, the trial judge fixed the value of the 22,238 square feet taken from segment 1 at 25$ per square foot and the value of the 39,200 square feet taken from segment 2 at 21<t per square foot.
Because the construction project entailed the creation of a much larger drainage ditch than had previously existed between *954 defendants’ properties and the highway, the trial judge found that in segment IB a lot with 420 feet frontage and 200 feet deep had been diminished in value by 5<t per square foot, and in segment 2 that a lot with 980 feet frontage and 200 feet deep had been diminished in value by the same amount per square foot.
The significant issues presented by this appeal will be discussed separately.

Computation of Damaged Remainder Area

The State argues that all of segment IB, measuring 420 feet frontage by 200 feet deep, contained 84,000 square feet. When the part taken (18,680 square feet) is subtracted, the balance is 65,320, which should have been the remainder on which the severance damage of 5<t per square foot was computed. Instead, the trial judge calculated severance damages in this segment on the basis of the entire 84,000 square feet.
The same argument is directed at the severance damage award made with reference to segment 2, which measured 980 feet frontage by 200 feet deep and contained 196,000 square feet, for which the trial judge allowed 5$ per square foot as severance damages. The State asserts that he should have deducted the part taken (39,200 square feet) and computed severance damages upon the remainder of 156,800 square feet.
It is well settled in our jurisprudence that the severance damage allowable as a result of an expropriation is the difference between the market value of the landowner’s remaining property immediately before and its diminished value immediately after the taking. State, Dept. of Highways v. Anderson, 356 So.2d 1086 (La.App. 2d Cir. 1978); State, Dept. of Highways v. Champagne, 371 So.2d 626 (La.App. 1st Cir. 1979); State v. Martin, 196 So.2d 63 (La. App. 3rd Cir. 1967).
However, where the evidence shows the landowner actually sustained damages to a particularly valuable portion of his tract, the award will be computed with reference to the before and after value of only the portion of the remainder suffering a loss in market value by reason of the taking. Dakin & Klein, Eminent Domain in Louisiana, p. 76 (1970).
In State v. Martin, supra, the State contended that the trial judge erred in permitting defendant’s experts to base their estimate of severance damages on the highest and best use of a typical lot measuring 100 feet by 200 feet. Rejecting this argument, the court explained that it interpreted the testimony of these experts to be “that the only severance damages sustained to the entire tract were those which related to this typical lot.”
Southwest Louisiana Electric Membership Corp. v. Beck, 299 So.2d 411 (La.App. 3rd Cir. 1974) was an expropriation suit for the construction of an electricity transmission line through the defendant’s property, taking about one acre out of a 15 acre tract. The court found severance damages “only in regard to the 200 foot swath of some 3.34 acres situated to the east of the right of way.”
In State, Dept. of Highways v. Westport Development Co., Inc., 332 So.2d 918 (La. App. 2d Cir. 1976), this court found no error in the method used by defendant’s appraisers to calculate severance damages because “the entire remainder was damaged only to the extent that the parcel between the two drainage servitudes was damaged.”
Implicit in Willet’s testimony in this case is that his calculation of severance damages was based upon a “front-use” tract, 200 feet deep, remaining after the first taking. The trial judge obviously accepted this testimony, concluding that the entire remainder containing in excess of 100 acres was damaged only to the extent that there was a diminution in value of the “front-use” lots measuring 200 feet deep after the first taking. Contrary to the State’s contention, he did not include the portions first taken in his severance damage computations, but simply brought this square footage from the rear and made it a part of the “front-use” lots. He committed no error by proceeding in this manner, since the cited jurisprudence fully supports that method of calculating severance damages.

*955
Offset of Severance Damages by Special Benefits

Willet testified that the new drainage ditch separating the remaining property from the highway would be 49.5 feet wide and 6.5 feet deep and that driveways leading to improvements which might be constructed on the property would require 60-inch culverts, at a total calculated cost of $17,280. It was his further testimony that the remaining “front-use” property would diminish in value by $13,425 because of the existence of the large ditch. He added these two figures for his computation of severance damages. However, he then proceeded to deduct from this the sum of $12,-939 as the “special benefit” accruing to the remainder by the bringing of rear land (beyond the original 200 foot depth) into the “front-use” tract.
The trial judge rejected the “cost-to-cure” approach and disregarded the testimony relating to special benefits. The State contends that he erred in not offsetting the severance damage award by the amount of special benefits as described by Willet.
La. R.S. 48:456.1 provides that “the plaintiff may not introduce evidence as to any special benefits unless specially pleaded.” Since the State did not plead special benefits, it offered no evidence on this issue but simply relied upon Willet’s testimony on this point.
The landowner claiming severance damages has the burden of proving them. City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349 (1959); Texas Gas Transmission Corp. v. Broussard, 234 La. 751, 101 So.2d 657 (1958); Harrison v. Louisiana Highway Comm., 191 La. 839, 186 So. 354 (1939).
Louisiana jurisprudence has established the general principle that recovery for severance damages to a remainder caused by a taking may be offset by any special benefits the remainder receives as a consequence of the new improvements for which the property is taken. State v. Central Realty Inv. Co., 238 La. 965, 117 So.2d 261 (1960); Thomas & Warner v. City of New Orleans, 230 La. 1024, 89 So.2d 885 (1956); State v. Cooper, 213 La. 1016, 36 So.2d 22 (1948). On the other hand, general benefits received by all property in the neighborhood may not be used to offset severance damages. City of New Orleans v. Giraud, supra; Louisiana Highway Comm. v. Hoell, 174 La. 302, 140 So. 485 (1932). Application of this distinction between general and special benefits “has been recognized as one of the most complex and difficult problems of expropriation law.” Dakin & Klein, supra, 86-87.
In Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941), general benefits were defined as “those which are shared alike by all property owners in the neighborhood or community” and special benefits as “those affecting a particular estate by reasons of its direct relationship with the improvement.” Applying this ruling, the court in State, Dept. of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3rd Cir. 1969), held:
"... if as a result of the widening or improving the street, the remainder of the tract left fronting on it is more valuable because of this frontage, the increased value due to such particular location is a special benefit.and may be offset against severance damages otherwise allowable to the landowner, (citation omitted) It is a special benefit ,|ven if the property of all other property owners with frontage along the route is similarly increased in value, (citation omitted)
“On the other hand, where the improvement for which the taking is made produces a general appreciation in the value of the property in the area irrespective of its peculiar location adjacent to the improvement in question, this is a general benefit attributable to all land in the vicinity.”
However, the Grey ruling seems to have been considerably narrowed by State, Dept. of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972) and State, Dept. of Highways v. Trippeer Realty Corp., 276 So.2d 315 (La.1973). In McPherson the court held *956 that a special benefit is an enhancement in property value that is peculiar to the defendant alone. On the other hand, in the Trippeer case the court found that proof of special benefits depended upon a showing that the project benefits experienced by frontage owners were not shared by the community at large which might have generally benefited from the improvements.
Be that as it may, once severance damages have been proved the burden shifts to the taker to prove both the existence and the quantum of any special benefit received by the property which may be available as an offset against severance damages. State, Dept. of Highways v. Marks, 188 So.2d 653 (La.App. 4th Cir. 1966). In this case the testimony of Willet on this issue simply stated that rear land brought into “front-use” lots would increase in value by a specified amount. He did not purport to testify as to what proportion of that increase would not be shared by the property in the general vicinity of the widened highway (under Grey); that the enhancement of value was peculiar to these defendants alone (under McPherson); or that all of the project benefits experienced by frontage owners were not shared by the community (under Trippeer).
Since the State did not prove that special benefits (as opposed to general benefits) accrued to defendants’ properties, we find that the trial judge correctly rejected this contention.

Value of Land Expropriated in Second Taking

In the first taking the trial judge valued the land taken from segment 1 at 25$ per square foot and that taken from segment 2 at 21$ per square foot. As previously noted, severance damage to the remainder was calculated on the basis of 5$ per square foot in the “front-use” tracts. In the second taking, which came ten months after the first, the trial judge placed the same values on the property taken from segments 1 and 2 as he did in the first taking. The State argues that he should have deducted the 5$ per square foot computed as severance damages in the first taking, leaving 20$ per square foot for the property in segment 1 and 16$ per square foot for property in segment 2 for the second taking values.
In State v. Martin, supra, the State filed suit to expropriate a servitude of drainage some eleven months after the defendant had sold plaintiff a strip of property upon which to construct a blacktop service road, which admittedly greatly enhanced the value of the remainder of defendant’s property. One of the questions presented on appeal was whether the market value of the expropriated property should include its enhancement resulting from the construction of the new road. The court held that resolution of this question depended upon a factual determination-was the servitude considered as part of the original undertaking or was it a subsequent enlargement or extension of that original project? If the latter, the enhanced value was to be included.
In this appeal there is no evidence in the record to show that the second taking, coming about ten months after the first, for the purpose of relocating utilities, was a part of the original highway widening project. Indications are that this second taking was required because of developments which were not anticipated at the time of the undertaking of the original project. Since under Martin the defendants could benefit from any enhancement in value to their property because of the highway widening, the trial judge properly acted within his discretion in the implied finding that ten months after the first taking the expropriated property had the same value as at the time of that first taking but prior to its “damage” by the taking.
In expropriating proceedings the trial court’s factual determinations as to value of property should not be disturbed on review in the absence of manifest error. State v. Burton, supra.

*957
Conclusion

For the reasons explicated, we affirm the judgments of the trial court in these consolidated suits, casting the appellant for those costs that are legally assessable against it.